[L. A. No. 919. Department Two.—February 25, 1902.]

OMAR PHILLIPS, Respondent, v. CHESLEY M. CARTER, and GEORGE M. PHILLIPS, Appellants.

DESERT LAND—PATENT—COLLATERAL ATTACK BY TRESPASSER—EJECTMENT.—A desert-land patent, regular upon its face, is not void, and cannot be collaterally assailed for mere irregularity in its issuance, in an action of ejectment against a trespasser who has no superior equity and no connection with the paramount source of title, and who holds adversely to the legal title.

ID.—ASSIGNABILITY OF RIGHT OF ENTRY—DEVISE.—A right of entry under the Desert Land Act of 1877, in favor of one who had re-

claimed the land, was assignable, and passed upon his death to his widow, under a residuary devise to her, if not otherwise disposed of, and was assignable by her to one who obtained a patent under the entry. It is sufficient to support such assignability that it was not prohibited by the terms or the policy of the original Desert Land Act, and is expressly allowed by the amendment of 1891 thereto.

APPEAL from a judgment of the Superior Court of Kern County and from an order denying a new trial. J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

Roth & McFadzean, for Appellants.

Hannan & Miller, and T. M. McNamara, for Respondent.

HENSHAW, J.—This action is ejectment. Plaintiff claimed and proved title under a patent of the United States. The land was reclaimed under the Desert Land Act of 1877. The defendants, in possession, did not connect themselves, and did not pretend to connect themselves, with the paramount source of title. They were trespassers, and their contention is, that the patent issued is void. They offered evidence which, they insist, established their contention, and it was rejected by the court. The soundness of the court's ruling in this regard is the principal matter in controversy. The matters which the defendants sought to establish by the rejected evidence are not seriously in dispute. They are the following: One J. A. Foster made an entry of the land in 1877 under the Desert Land Act. Foster died on April 21, 1886, leaving a will. His will did not specifically mention the land in controversy. His widow, Janie A. Foster, was the residuary devisee and legatee, and decree of distribution was made to her in accordance with the terms of the will. On the eighteenth day of April, 1896, the widow sold and conveyed all her rights to the land in question to plaintiff. Plaintiff, on May 9, 1896, made final proof and payment and received his final certificate, and on July 25, 1898, obtained his patent. Defendants entered into possession after final proof and payment so made. During the lifetime of Foster the land had been irrigated and reclaimed by him, or by those acting in his behalf. The original desert entry of Foster, with many

others in the same district, had been suspended by the general land office, and so remained until after 1890; during which time it was, of course, impossible for Foster to make final proof and payment. The final proof and payment, however, were in fact made within the time allowed by the land department after removal of the suspension.

The fundamental contention of appellants growing out of this state of facts is, that, under the Desert Land Act, the right of entry is a personal right which dies with the entryman, is not subject to assignment during his life, and does not descend upon his death.

The court, as has been said, rejected the offered evidence upon the ground that the patent upon its face was regular and not void; that, looking back of the patent, there was a law authorizing its issuance, and if any irregularity accompanied that issuance it could only be taken advantage of by one with superior equities to the holder of the legal title, or by one who connected himself with the paramount source of title, and not at all by one claiming in hostility to the patent, and whose sole claim to the land came from an entry upon and adverse holding of it against the legal title. (*Gale* v. *Best,* 78 Cal. 239;[1] *Smelting Co.* v. *Kemp,* 104 U. S. 636; *Steel* v. *Smelting Co.,* 106 U. S. 447; *Hartman* v. *Warren,* 76 Fed. 167; *Doll* v. *Meador,* 16 Cal. 326; *Chapman* v. *Quinn,* 56 Cal. 266; *Galvin* v. *Palmer,* 113 Cal. 53.) In this conclusion we think the court was perfectly correct; but even if the rejected evidence be considered, the position of appellants would not be bettered. There is nothing in the Desert Land Act of 1877, nor in the act of March 3, 1891, amendatory thereof, which either in terms or by express implication prohibits assignments; and while it is true that in construing the acts of the government, and of the grants depending thereon, the rule of construction is that most favorable to the grantor, yet the highest tribunal of the country, and the court of last resort for the construction of such acts, has uniformly held that this rule does not impose such a limitation upon ownership, unless by express provision, or by necessary implication, the law must be so read. Thus, in *Webster* v. *Luther,* 163 U. S. 331, the court, discussing the law affecting the sale and transfer of soldiers' additional homestead rights before entry,

---

[1] 12 Am. St. Rep. 44.

says: "The presumption is that Congress intended to make this right as valuable as possible. . . . Any restriction upon its alienation must decrease its value. We are unable to find anything in the acts of Congress or in the dictates of an enlightened public policy that requires the imposition of any such restraint. On the other hand, the general rule of law which discourages all restraints upon alienation, the marked contrast between the purpose and the provisions of the grant of the right to the additional land, and the history of the legislation which is codified in the existing homestead law, leave us without doubt that the assignment before entry of the right to this additional land granted by United States Revised Statutes (sec. 2306) contravenes no public policy of the nation, violates no statute, and is valid." Without multiplying authorities upon this proposition, it is sufficient to refer to the language of this court in *Rose* v. *Nevada etc. Lumber Co.*, 73 Cal. 385, where it is said: "In the absence of an express prohibition against an alienation of the property by the complainant after the issuance of a certificate from the general land office to locate in person or by agent a certain number of acres, we cannot say that the right so to alienate does not exist. *It is a right which need not in terms be granted by the sovereign authority, for it exists, if not expressly prohibited or opposed to public policy.*"

The right of alienation or assignment, therefore, in the absence of imposed restriction, vests in the entryman, and, as has been said, there is nothing in the law imposing such restriction, while, upon the other hand, equitable considerations impel strongly to the view that such rights should be assignable. The case at bar is illustrative of this. Foster had filed his declaratory statement, paid twenty per cent of the purchase price, and reclaimed the land by irrigation as required by law. He was not permitted to make his final payment and proof, because the right to do so had been peremptorily suspended by order of the land department. Foster then, having done all that the law requires, and being unable to obtain his patent, dies. To hold that his right, perfected in so far as he could perfect it, was not alienable, and did not descend, would mean that the policy of the government was to deprive his heirs of the fruits of his labor and expenditures, and leave the land, with all its improvements, open

to the first comer who might obtain possession of it. The central idea, and the whole policy of the government, in dealing with these arid lands, was to secure their reclamation upon moderate terms for the benefit of the country. While, of course, having no determinative weight in the matter, the views of the land department are entitled to consideration. The receipts which they originally issued under the act of 1877 tacitly assumed that the rights of the entryman were alienable, and provided in terms that a patent should issue to the entryman ''or his assigns or legal representatives.'' Later, however, the department apparently began to doubt the soundness of its construction of the act, and announced that, while it would not recognize future assignments, it would recognize entries which had been assigned prior to the promulgation of the last decision, and that patents therefor would be issued to assignees. Later again it fully recognized the assignability of such entries. Finally, it may be said that the fancied evils which appellant sees in the construction that such entries are assignable, and that it was to avoid these evils that Congress did not in the act of 1877 expressly make them assignable, are entirely disposed of by the fact that Congress, in the amendatory act of 1891, instead of expressly declaring them to be unassignable, expressly declared them to be assignable.

The judgment and order appealed from are affirmed.

Temple, J., and McFarland, J., concurred.