[Civ. No. 310. Second Appellate District.—May 27, 1907.]

B. L. BRYAN, Appellant, v. J. A. GRAHAM, Respondent.

STATE LANDS—RECESSION OF LAKE—TRUTH OF AFFIDAVIT—SUBSE-
QUENT AGREEMENT TO SELL BEFORE CERTIFICATE.—Where it appears
that at the time of an application to purchase state lands uncov-
ered by the recession of a lake, in pursuance of the act of 1893.
that the prior applicant truthfully stated in his affidavit that he
desired to purchase the land "for his own use and benefit, and for
the use and benefit of no other persons whatsoever," a subsequent
agreement to sell the land to another person about forty days
after the application and before the issuance of the certificate of
purchase is not forbidden by that statute, nor by any statute of the
state for the sale of state lands.

ID.—STATUTE ALLOWING SALE OF CERTIFICATE—CONSTRUCTIVE POLICY
OF LAW—RESTRAINTS UPON ALIENATION.—The express statutory
grant of the right to sell "certificates of purchase and all rights
acquired thereunder," in section 1315 of the Political Code, cannot
be construed as an expression of legislative intent that one who
agreed to sell after filing his application, and before the issuance
of his certificate of purchase, should lose his right to purchase.
The policy of the law is to discourage restraints upon alienation.

ID.—EFFECT OF SUBSEQUENT CONTRACTS OF SALE AS EVIDENCE—CON-
FLICT OF EVIDENCE—SUPPORT OF FINDING.—Assuming that contracts
to sell made subsequently to an application to purchase state
lands, before the issuance of a certificate, would constitute any
evidence tending to show the falsity of the affidavit, which would
defeat the purchase, yet where it appears that there was neverthe-
less a conflict of testimony upon the issue as to whether or not
defendant, at the time he made the prior application to purchase,
did so for his own use and benefit, the finding of the court in his
favor on that issue cannot be disturbed upon appeal.

APPEAL from a judgment of the Superior Court of Kings
County, and from an order denying a new trial. M. L.
Short, Judge.

The facts are shown in the opinion of the court.

Letus N. Crowell, for Appellant.

The constitution, article XVII, section 2, expressly discour-
ages the holding of large tracts of uncultivated and unim-
proved land by individuals or corporations; and the legislature

by positively requiring every applicant to swear that he is taking up the land for his *own use* discourages every other *use,* and the statute and constitution are to be construed together. (Endlich on Interpretation of Statutes, pt. I, p. 1.) That plaintiff did not intend this land for his own sole use is shown by the circumstances of the case. (2 Rice on Evidence, par. 317; *Beckman* v. *Colgrove,* 12 Land Dec. 303; *Buttes* v. *Collins,* 12 Cal. 457; Pol. Code, sec. 3515; *Cadierque* v. *Daran,* 49 Cal. 356; *Molinari* v. *Scolary,* 15 Land Dec. 201; *Tagg* v. *Jensen,* 16 Land Dec. 113; *Walker* v. *Clayton,* 24 Land Dec. 79; *McGregor* v. *Donnelly,* 67 Cal. 150, 151, 7 Pac. 422.)

J. L. C. Irwin, for Respondent.

United States land decisions, under statutes forbidding alienation, have no application to state land laws, which do not contain the same provisions. In the absence of an express prohibition in any statute against alienation of any inchoate right of property, the right of alienation thereof exists. (*Rose* v. *Wood and Lumber Co.,* 73 Cal. 385, 15 Pac. 19; *Phillips* v. *Carter,* 135 Cal. 604, 87 Am. St. Rep. 152, 67 Pac. 1032; *Lamp* v. *Davenport,* 85 U. S. 307; *Webster* v. *Luther,* 163 U. S. 33, 16 Sup. Ct. Rep. 963; *Adams* v. *Church.* 193 U. S. 516, 24 Sup. Ct. Rep. 512; *Frink* v. *Hoak,* 35 Or. 17, 56 Pac. 1093; *Arnold* v. *Christie* (Ariz.), 33 Pac. 619; *Grant* v. *Oliver,* 91 Cal. 158, 27 Pac. 596; *Montgomery* v. *Pacific Coast Land Bureau,* 94 Cal. 286, 28 Am. St. Rep. 122. 29 Pac. 640; *Montgomery* v. *McCarrol,* 10 Utah, 22, 36 Pac. 50.)

SHAW, J.—Appeal from judgment and order denying motion for new trial.

This proceeding arises out of conflicting claims of the parties due to the fact that both were applicants to purchase a quarter section of land under "An Act regulating the sale of the lands uncovered by the recession or drainage of the waters of inland lakes," etc., as enacted in 1893 (Stats. 1893, p. 341), and amended 1899 (Stats. 1899, p. 182). The land in question is a part of the territory uncovered by the receding waters of Tulare lake in Kings county. The application of the respondent was made December 14, 1904, and

that of appellant made January 31, 1905. Both applications
were in due form and accompanied by the required affidavits.
Upon the filing of appellant's application the state surveyor
general declared a contest to exist between said parties con-
cerning the right to purchase the land and made his order
referring such contest to the superior court of Kings county
for adjudication as to the respective rights of said parties
in the premises.

Plaintiff alleged that the affidavit of defendant was false,
in that said defendant did not at the time of making said
application and affidavit desire to purchase said land for
his own use and benefit, but for the use and benefit of an-
other; and that at the time of making the application and
affidavit defendant had made a contract to sell the same.
These allegations are denied by the answer, and upon the
trial the court found said allegations of the complaint to be
untrue and rendered judgment for defendant.

Section 1 of said act, under which these applications were
made, requires that the applicant shall, among other facts,
state in his affidavit "that he desires to purchase the same
(the land) for his own use and benefit, and for the use and
benefit of no other person or persons whomsoever, and that
he has made no contract or agreement to sell the same." It
is admitted that the provisions of section 3500 of the Politi-
cal Code, which provides that "any false statement con-
tained in the affidavit provided for in section 3495, defeats
the right of the applicant to purchase the land, or to re-
ceive any evidence of title thereto," likewise defeats the
right of any applicant to purchase the land under section 1
of said act of 1893. On his own behalf defendant testified
to the truth of the statements contained in his affidavit, and
the only evidence offered in support of plaintiff's allega-
tion that defendant's application was made for the use and
benefit of another than himself was an agreement, the nature
of which does not clearly appear, made with one Fowler
about January 1, 1905, and a contract made January 23,
1905, some forty days after the filing of his application,
whereby defendant agreed to sell the land in question to one
Rubenstein. Assuming these contracts subsequently made to
constitute any evidence of the falsity of the affidavit, there
was, nevertheless, a conflict of testimony upon the issue as
to whether or not defendant at the time he made the appli-

cation to purchase did so for his own use and benefit, and the finding of the court therein cannot be disturbed.

The contract to sell the land to Rubenstein was made before the certificate of purchase was issued, and it is contended that, by reason of entering into this contract prior to the issuance of this certificate, defendant lost his right to complete the purchase. In support of his contention appellant cites numerous cases, in all of which the decisions were based upon an express statutory provision either prohibiting or limiting the right of alienation or transfer; for instance, the statutes of the United States relating to homesteads require, upon the making of final proof, an affidavit that no part of such land has been alienated. (U. S. Rev. Stats., sec. 2291, [U. S. Comp. Stats. 1901, p. 1390].) So, too, there is an express prohibition of transfer or alienation prior to the issuance of the patents as to lands held under claim of pre-emption. (U. S. Rev. Stats., sec. 2263.) Our attention has not been called to any such limitation or requirement contained in the law relative to public lands of the state. The contract is with the state, and in the absence of any legislative expression, other than that contained in section 3500, Political Code, which clearly was not intended to apply to an agreement to sell, made subsequent to the filing of an application and prior to the issuance of the certificate of purchase, it cannot be held that appellant's rights are in any wise abridged by the agreement under discussion. Section 3515 of the Political Code expressly provides that "certificates of purchase, and all rights acquired thereunder, are subject to sale," etc. This express statutory grant of the right to sell the certificate cannot be construed as an expression of legislative intent that one who agreed to sell after filing his application and before the issuance of his certificate to purchase should lose his right to purchase. The policy of the law is to discourage restraints upon alienation. (*Rose* v. *Wood & Lumber Co.,* 73 Cal. 385, [15 Pac. 19]; *Phillips* v. *Carter,* 135 Cal. 604, [87 Am. St. Rep. 152, 67 Pac. 1031]; *Lamp* v. *Davenport,* 85 U. S. 307; *Adams* v. *Church,* 193 U. S. 510, [24 Sup. Ct. Rep. 512]; *Arnold* v. *Christy,* 4 Ariz. 19, [33 Pac. 619].)

Prior to the amendment of 1885, section 3495 of the Political Code, providing for the purchase of school lands, contained a provision requiring the affidavit of the applicant

to state therein that the purchase "was for his own use and benefit, and for the use and benefit of no other person," etc.   In construing this statute—the facts being that H. had applied to purchase a section of school land under an agreement made with N. at the time of filing his application that one-half thereof was for the use and benefit of N., and which one-half thereof H. was to convey to N. as soon as purchased— the court held, in *Thompson* v. *Hancock,* 51 Cal. 110: "There is nothing in section three thousand four hundred and ninety-five of the Political Code which prohibits the sale of any portion of a sixteenth or thirty-sixth section, belonging to the State, to one who has contracted to convey to another a part of the land so acquired," reversing the lower court upon this point.

We find nothing in the Lake land act of 1893, under which this application was made, which prohibits the applicant from making an agreement to sell the land before the issuance to him of the certificate of purchase therein provided for.

The judgment and order are affirmed.

Allen, P. J., and Taggart, J., concurred.