[Civ. No. 4761.   Third Appellate District.—November 7, 1933.]

3-H SECURITIES COMPANY (a Corporation), Respondent, v. G. W. KIBBY, County Treasurer, etc., Appellant.

174

F. M. Ostrander and Stephen P. Galvin for Appellant.

Norris J. Burke, Hatfield, Wood & Kilkenny and Geo. J. Hatfield for Respondent.

BURROUGHS, J., *pro tem.*—Three separate petitions for writs of mandate were consolidated for trial in the court below, and have also been consolidated for the purposes of appeal. The writs were granted by the court, hence these appeals. The following statement of facts is sufficient for an understanding of the questions presented for decision.

The San Joaquin River Water Storage District, hereinafter referred to as the district, was organized November 26, 1923, under the California Water Storage District Act, approved June 3, 1921 (Deering's General Laws, 1931, vol. 3, p. 5103). On March 4, 1924, an assessment was levied on the property within the district under the provisions of section 16 of said act. Proceedings were regularly had for the collection of the assessments, and the assessments upon the several pieces of property mentioned in the petitions herein not having been paid, the properties were offered for sale at public auction. There were no bidders for the properties described in cases Nos. 9107 and 9108, and said properties were struck off to the district as provided in section 21 of the act, and certificates of sale therefor issued to the district by the county treasurer as *ex-officio* treasurer of the district. There was a bidder for the property described in action No. 9086, and the property was thereupon sold to the bidder and a certificate of sale issued to her. Under the terms of the act, three years from the date of the sale is allowed for redemption of the property by the owner or any party interested. It is admitted that the time has expired and no redemption has been made. It is also admitted that all of the proceedings up to and including the sales were regular and in accordance with the statute.

The board of directors of the district, by a resolution dated February 25, 1929, authorized the president and

treasurer of the district to execute and deliver to Miller & Lux, Inc., all necessary instruments of transfer, vesting in the latter full and complete title to all the certificates of sale and tax deeds referred to in said resolution, which included those set forth in actions Nos. 9107 and 9108. On March 6, 1929, a conveyance was made by the district to said Miller & Lux, Inc., in accordance with said resolution conveying to them all of the certificates of sales and tax deeds and the real property referred to and by mesne conveyances all of said property was conveyed to the petitioner herein, who in due time demanded of the treasurer of Merced County, as *ex-officio* treasurer of the district that he convey all of said property to petitioner, but the treasurer refused and still refuses to make such conveyance.

With regard to action No. 9086, the proceedings differed from the others to the extent that the property described in the petition was not sold to the district, but to one R. Mazza, and a certificate of sale was issued to her. Thereafter, Mazza, by a separate instrument assigned and transferred to the petitioner herein, the certificate of sale issued to her by the said district and conveyed to petitioner the real property therein described. Thereafter, demand was made upon the county treasurer as *ex-officio* treasurer of the district for a deed to said property, which demand was also refused. These actions are the outcome of such refusals.

We will first discuss the questions presented in actions No. 9107 and No. 9108, where the property was sold to the district for the delinquent assessments above referred to. It is admitted that the proceedings were regular up to and including the sale to the district and the issuance of the certificates of sale. Therefore it becomes unnecessary to further refer to such proceedings, for, in so far as these parties are concerned, the land thereby became the property of the district, and the real question involved is whether or not the property was legally sold by the district to the predecessors in interest of the respondents. Section 21 of the act above referred to, provides: "If no redemption shall be made within said three years, the purchaser or the district, if the property shall have been sold to the district, . . . shall be entitled to a deed executed by the county treasurer or his successor in office."

It is further provided in said section that: "The board of directors may sell such property sold to the district at any time at a public auction after notice given for the same period and in the same manner as herein provided for sale of delinquent assessments."

And it is further provided in said section that: "The county treasurer or county treasurers must prepare and as soon as the same is complete publish once a week for two consecutive weeks in each county wherein lands of the district are situated, in one notice a list of all delinquencies."

At the time of the passage of the resolution by the board of directors of the district and the execution of the instruments of conveyance of said property to Miller & Lux, Inc., the foregoing method of sale of property for delinquent assessments was the only method provided by the act. And it is claimed by the appellant that this method should have been followed by the board of directors of the district and the transfer to Miller & Lux, Inc., under the resolution above referred to was void and does not authorize the treasurer to issue a deed thereunder. In support of this claim, it is argued by the appellant that tax proceedings are *in invitum* and must be strictly followed, otherwise a deed issued thereon is void. However, it will be observed that the original owner of this land is not a party to these proceedings and in so far as the parties here are concerned, the tax proceedings were admitted to be regular and conveyed title to the district. Such being the case, there is no necessity to examine into this subject, for the original owner was divested of all title or right of redemption after the expiration of the three years for redemption.

■ Did the board of directors of the district have a right to sell the property by resolution at private sale in the face of section 21 of the act, which provides the only method of disposition of the property to be at public auction? If there had been no further legislation upon this subject, we do not believe that it would be seriously contended that the method of sale of the interest of the district pursued by the board of directors would have conveyed title. However, in 1931, section 21 of the said act was amended. The purpose of the amendment was to cure any infirmities in sales such as the one before us. That the state legislature may validate irregular sales of public property has been

settled in *Thompson* v. *Thompson*, 52 Cal. 154, and *Muller* v. *Cary*, 58 Cal. 538. By the amendment above referred to, in addition to providing for a sale of the property of the district at public auction, it is provided: "The Board of Directors may also dispose of said property at a private sale, without any notice, when the district is in the process of dissolution and such sale is deemed to be for the best interests of the District; the consideration received from the sale of said property may be past or present consideration, but must not be less than that herein provided for in the case of sales at public auction; and in any case where a District in the process of dissolution has sold and transferred any of its property at a private sale, for valuable consideration, such sale and transfer is hereby validated and approved."

It is contended by the appellant that at the time the transfer of the certificates of sale in actions No. 9107 and No. 9108 were made by the district to Miller & Lux, Inc., the district was not in process of dissolution. The evidence on this score discloses that prior to the said transfer, resolutions to the effect that it was not feasible to carry on the district; that the district should be dissolved; that the attorney-general should bring an action to dissolve the same; and also other resolutions relating to ways and means of abandoning the district and disposing of the property, had been passed. Under the Statutes of 1919, page 751, which prescribed the method of dissolving such a district, the attorney-general, before commencing the action, was required to publish for two consecutive weeks in a newspaper situated in the county where the greater portion of the land in the district was located, a notice of his intention to begin such an action. The evidence shows that this notice was in the course of publication at the time of the passage of the resolution transferring the said property and certificates of sale to Miller & Lux, Inc. This publication of notice was required by the act as a prerequisite to the commencement of the action and without question was jurisdictional, and constituted an integral part of the process of dissolution of the district. Webster's New International Dictionary defines the word "process" as follows: "Law. The writ or mandate that serves as the means used for bringing a defendant into court to answer an action, civil or criminal; in

a broader sense, any writ, order, notice, summons or other writing by which a court exercises its jurisdiction over the parties or subject matter of any action or proceeding; also collectively, the whole of such mandates or other writing in an action or proceeding (in this sense being essentially equivalent to procedure)." Such seems to be the definition given to the word by lexicographers, and in *Doe Run Lead Co.* v. *Holmes,* 283 Mo. 648, 685 [223 S. W. 600], the word "dissolution", as used in its ordinary meaning, means "An act or process of dissolving, or breaking up, separation into component parts, disorganized." We think, without further citations of authority, it is clear that when the attorney-general commenced the publication of notice of intention to commence the action, the district was in process of dissolution. The complaint to dissolve the district recited that the district no longer owned or held any property. The answer filed in said proceeding by the district admitted this fact and the decree entered in the action also held that the statements in the complaint were true, and, as it was the duty of the court to dispose of all the property owned by the district upon its dissolution, we think that the decree constituted a conclusive determination that the sale to Miller & Lux, Inc., was valid. We are satisfied from the foregoing that the amendment to the act passed in 1931, *supra,* was clearly a ratification of the sale made to Miller & Lux, Inc. Further, we are satisfied that the *quo warranto* proceeding taken by the attorney-general, and which has become final, is also conclusive against the appellant in actions numbered 9107 and 9108.

In action No. 9086, what has already been said concerning the assessment and procedure to and including the sale of the land at public auction and the vesting of the title in the individual purchasing the same, applies with equal force to this case. It is contended by the appellant that as section 21 of the act provides that the purchaser is entitled to a deed and not his or her assigns, it precludes an assignee from obtaining a deed, and, in this case, the certificate of sale was assigned by the purchaser to the petitioner herein and by a separate instrument of assignment. However, section 1044 of the Civil Code provides: "Property of any kind may be transferred, except as otherwise provided by this article." In *Miller & Lux, Inc.,* v. *James*

*Co.*, 179 Cal. 689, at 692 [178 Pac. 716, 717], it is said: "It is fundamental that a man can transfer property which he owns, and that such transfer is good against the whole world." It was held in *Phillips* v. *Carter*, 135 Cal. 604, 607 [67 Pac. 1031, 87 Am. St. Rep. 152], that a government land entry was assignable before patent, even though the statute contained no provision for assignment. It was there said: "It is a right which need not in terms be granted by the sovereign authority, for it exists, if not expressly prohibited or opposed to public policy." ■■■ It is also contended by the appellant that the respondent herein was not shown to be the assignee of the purchaser of the certificate of sale. However, it is alleged in respondent's answer that the respondent herein was the assignee of the purchaser and that he was the true and lawful owner of the certificate of sale and the court found such allegation to be true. In support of this finding, the recorded certificate of sale was introduced in evidence. The recorder, instead of copying the certificate at length in a book, simply made a file for these certificates. The method pursued by the county record was a sufficient compliance with the statute. We think the evidence is sufficient to show that the respondent was the owner and holder of the certificate of sale. Without further discussion of the points involved, what has already been said establishes that the judgment of the court was correct and the writs should issue.

It is therefore ordered that the judgment in each case be and it is hereby affirmed.

Thompson, J., and Plummer, Acting P. J., concurred.