(November 25, 1913.)

## NELLIE BURGESS, Respondent, v. W. G. CORKER and JOSEPHINE A. CORKER, Appellants.

[136 Pac. 1127.]

CONTRACT—FAILURE TO COMPLY WITH CONTRACT—RESCISSION—JUDGMENT.

1. *Held,* that the plaintiff should be charged with the sum of $40.70 for the possession of the land and the benefit of the same during the period she has been in such possession since the time she paid $500 on the 24th day of May, 1911, as an offset against the interest which the court finds in finding of law No. 5; that plaintiff cannot recover as an offset for the taxes she has paid, inasmuch as she was in possession of the land during the time she paid the taxes, and paid the same voluntarily.

2. *Held,* that conclusion of law No. 9 be modified as follows: That the plaintiff should have judgment for the sum of $500 and the costs of this appeal.    That the decree should be modified according to the findings as modified in this opinion.

APPEAL from the District Court of the Fourth Judicial District for Elmore County.    Hon. Edward A. Walters, Judge.

An action for the purpose of canceling and annulling a certain contract entered into between the appellants and respondent for selling and purchasing real property.    Judgment modified.

W. C. Howie, for Appellants.

Respondent cannot have a rescission for a mistake where no fraud has been practiced, except that she offer to pay the defendant for the reasonable use and rental of the premises and restore the possession thereof. (39 Cyc. 1422–1427; *Shipp v. Wheeless,* 33 Miss. 646; *Underwood v. West,* 52 Ill. 399; *Worthington v. Campbell,* 8 Ky. Law Rep. 416, 1 S. W. 714; *Wood v. Wheeler,* 106 N. C. 512, 11 S. E. 590; *Leach* v. *Leach,* 4 Ind. 628, 58 Am. Dec. 642; *Kelly v. Owens,* 120 Cal. 502, 47 Pac. 369, 52 Pac. 797; *Godding v. Decker,* 3 Colo. App. 198, 32 Pac. 832; *Buena Vista etc. Co. v. Twohy,* 107 Cal. 243, 40 Pac. 386; *Bowden v. Achor,* 95 Ga. 243, 22 S. E. 254; *Bryant v. Stothart,* 46 La. Ann. 485, 15 So. 76; *Henninger v. Heald,* 52 N. J. Eq. 431, 29 Atl. 190; *Westly v. Diamond,* 26 Okl. 170, 109 Pac. 524.)

If respondent is entitled to any relief, it should be a reformation and not cancellation. (*Pierce v. Houghton,* 122 Iowa, 477, 98 N. W. 306; *Davis v. Benedict,* 122 Mich. 657, 81 N. W. 576; *Topping v. Jenaette,* 64 Neb. 834, 90 N. W. 911; *Perry v. Sadler,* 76 Ark. 43, 88 S. W. 832; *Stonesifer v. Kilburn,* 122 Cal. 659, 55 Pac. 587; *Allen v. Kitchen,* 16 Ida. 133, 100 Pac. 1052, 18 Ann. Cas. 914.)

The fact that we did not have the title to the other land at the time does not change the rule, providing that we would be able to deliver title at the time called for in the contract. (*Kimball v. West,* 15 Wall. (U. S.) 377, 21 L. ed. 95; 39 Cyc. 1410–1412, 1213, par. 5.)

W. T. Stafford, for Respondent.

Mutual mistake as to a material fact will avoid the contract. (*Barfield v. Price,* 40 Cal. 535; *Johnson v. Withers,* 9 Cal. App. 52, 98 Pac. 42; *Houser v. Austin,* 2 Ida. 204, 10 Pac. 37; *Barth v. Deud,* 11 Colo. 494, 19 Pac. 471; 9 Cyc. 397; *Lestage v. Barth,* 19 Colo. 671.)

And it is immaterial whether the defendant knew the representation was false. (*Best v. Offield,* 59 Wash. 466, 110 Pac. 17; *Garrett Co. v. Halsey,* 38 Misc. 438, 77 N. Y. Supp. 989.)

An instrument executed under a mistake of fact will be set aside whether the mistake be unilateral or mutual, there being no meeting of the minds. (*Wirsching v. Grand Lodge F. A. M.,* 67 N. J. Eq. 711, 56 Atl. 713, 63 Atl. 1119, 3 Ann. Cas. 442; *Farmers' Loan & Trust Co. v. Suydam,* 69 Neb. 407, 95 N. W. 867; *Bowman v. Besley,* 122 Iowa, 42, 97 N. W. 60; *Singer v. Grand Rapids Match Co.,* 117 Ga. 86, 43 S. E. 755; *Barker v. Fitzgerald,* 105 Ill. App. 536; *Story v. Gammell,* 68 Neb. 709, 94 N. W. 982.)

A mutual mistake as to the boundary or location of a tract of land contracted for affects the identity of the subject matter and avoids the same. (*Beard v. Beall* (Ky.), 21 S. W. 236; *Megie v. Bennett,* 51 N. J. Eq. 281, 27 Atl. 917; *Bigham v. Madison,* 103 Tenn. 358, 52 S. W. 1074, 47 L. R. A. 267; *Moore v. Hazelwood,* 67 Tex. 624, 4 S. W. 215; *Stille v. Mc-Dowell,* 2 Kan. 374, 85 Am. Dec. 590; *Stong v. Lane,* 66 Minn. 94, 68 N. W. 765.)

A defective identification of papers and records in record on appeal cannot be cured after the submission of the case, nor even after the court's attention has been directed to the defect by motion. (*Simmons Hardware Co. v. Alturas Commercial Co.,* 4 Ida. 386, 39 Pac. 553; *Village of Sandpoint v. Doyle,* 9 Ida. 236, 74 Pac. 861; *Kootenai County v. Hope Lumber Co.,* 13 Ida. 262, 89 Pac. 1054.)

A proper certificate filed after the hearing comes too late, although it might have been granted if presented in the original hearing. (*Steve v. Bonners Ferry Lumber Co.,* 13 Ida. 384, 92 Pac. 363; *Hall v. Jensen,* 14 Ida. 165, 93 Pac. 962.)

STEWART, J.—When this case came on for hearing counsel for plaintiff presented a motion to dismiss the appeal on the following grounds: 1. That Rule 21 of this court has not been complied with. 2. That the record on appeal has not been authenticated or identified by bill of exceptions, or in any manner, or at all. 3. That the record does not show that the papers contained in the transcript are the papers or copies of the papers used by the court below in considering and deciding the action denying a new trial.

At that time counsel for appellants made a showing to this court, and upon that showing requested that he be allowed to supply a proper identification of the papers that were used by the trial court at the hearing of the motion for a new trial, and the same was signed by Judge Edward A. Walters, the judge who tried the case, and counsel for appellants, W. C. Howie, makes an affidavit and certificate which show clearly the particular papers and records that were used by the trial judge, that they included the instructions to the jury, the interrogatories submitted by the court to the jury, together with the jury's answers thereto, findings of fact, conclusions of law, decree, defendants' notice of intention to move for a new trial, defendants' amendment to notice of intention to move for a new trial, defendants' motion for a new trial and the reporter's transcript of the proceedings, all of which are of the records and files in the case, and were submitted to the judge and by him used on the hearing of the motion for a new trial and constitute all the records and papers used or considered by the judge at such hearing.

In the certificate of the district judge he certifies that all of the records and files in said case were submitted to him and used on the hearing of the motion for a new trial, and constitute all the records, papers and files used or considered, and in this certificate the judge specifies the pleadings and the order of the court overruling the motion for judgment and the overruling of the demurrer, the plaintiff's answer to the cross-complaint, the objection by defendants to trial by jury, the court's instructions to the jury, the interrogatories submitted by the court to the jury, together with the jury's answers thereto, findings of fact, conclusions of law, decree, defendants' notice of intention to move for a new trial, defendants' amendment to notice of intention to move for a new trial, defendants' motion for a new trial and the reporter's transcript of the proceedings. Upon the showing made the motion to dismiss the appeal is overruled. (*Steensland v. Hess, ante,* p. 181, 136 Pac. 1124.)

This action was brought in the district court by the respondent against the appellants for the purpose of canceling

and annulling a certain contract entered into between appellants and the respondent dated May 24, 1911, whereby the appellants agreed to sell to the respondent certain real estate for the sum of $3,000, the respondent agreeing to pay $500 cash down and the balance as follows: $500 in six months, $1,000 in eighteen months and the other $1,000 in thirty months, or November 24, 1913, and upon completion of the payments appellants were to convey to respondent a good title to the land.

The contract also provides: "In the event of a failure to comply with the terms hereof, by the said party of the second part, the said parties of the first part shall be released from all obligations in law or equity to convey said property, and the said party of the second part shall forfeit all rights thereto and all moneys theretofore paid shall be forfeited as liquidated damages, and the said parties of the first part, on receiving such payments at the time and the manner above mentioned agree to execute and deliver to the said party of the second part, or to her assigns, a good and sufficient deed for the conveying and assuring to said party of the second part the title to the above described premises free and clear of encumbrances."

The contract also provides: "It is hereby understood and agreed, however, that whereas the said parties of the first part have not now a deed to said lands, but a contract for a deed, the said property being now in process of administration to straighten the title, it is hereby agreed that in the event the said parties of the first part should from any cause fail to perfect their said title to said lands that the said parties of the first part will refund to said party of the second part all moneys heretofore paid or hereafter paid by her on this contract, including all taxes and other necessary payments made by said party of the second part. And it is understood that the stipulations aforesaid are to apply to and bind the heirs, executors, administrators and assigns of the respective parties, and that the said party of the second part is to have immediate possession of said premises, but when it is fully determined, if it should be, that the title shall

fail, upon repayment of the moneys, as heretofore stipulated, the said party of the second part will redeliver possession of the premises to said parties of the first part.''

This contract was recorded in the recorder's office of Lincoln county on June 6, 1911.

The trial court made findings of law which were based upon the contract made between the parties to the action, and the court finds as follows:

''5. That the defendants are indebted to the plaintiff in the sum of $500 with interest thereon from the 24th day of May, 1911, at the rate of 7 per cent per annum together with her necessary costs and disbursements here fixed at $40.70.''

''9. That the plaintiff should have judgment for the sum of $500 with interest at the rate of 7 per cent per annum interest from the 24th day of May, 1911, together with her costs and disbursements in the sum of $40.70, and that the said contract should be rescinded, set aside and held for naught, and canceled of record.''

The decree in this case was mainly founded upon findings of law 5 and 9 above stated.

Shortly after the contract was made the respondent secured an engineer and had a survey made of the land described in the contract and found that a small portion, three or four acres of cultivated land and a part of the orchard, the house and well, were not on the lands included in the description, and notified appellants of that fact. . Appellants also had a survey made and found that this statement of the respondent was true, and that it was government land, and they immediately took steps to secure scrip to place on the lands containing the improvements, and notified the respondent of the above facts, and that they would secure her title to the land she thought she was getting as quickly as they would the balance of the land, but before they had completed the arrangements for the scrip the respondent notified the appellants by letter, dated November 5, 1911, as follows:

''Replying to your letter of October 25th, will say I would not be interested in purchasing any new land from you without a stipulated number of inches of water to cover said land,

therefore will repeat that the only settlement I will consider is a return of my funds and a release from the agreement entered into under false information."

This contract provides for reversion to the appellants if the respondent fails to make her payments and forfeiture of the money heretofore paid, it being cheaper to file a desert entry, although appellants offered to acquire title for the land containing the improvements, immediately, and to convey it to her along with the other lands without extra charge. This she refused. The respondent never returned possession of the property or offered to do so, notwithstanding the fact that she has been in possession for two years and never has accounted for or offered to account for the rents and profits of the property, but rather repudiated the contract and refused to comply with it and brought this action to have the contract declared null and void, and for the return of her $500 with interest.

It will be seen that mutual provisions are to be found in the contract involved in this case, among which are, that in the event of a failure to comply with the terms of the same by the party of the second part the parties of the first part shall be released from all obligations in law or equity to convey the property, and that the second party shall forfeit all rights thereto and all moneys that had been paid as liquidated damages, and that it was agreed that the parties of the first part had not a deed to said land, but a contract for a deed, the property being in process of administration to straighten the title, and it was agreed in the event the parties of the first part should from any cause fail to perfect their title to the lands, that they would refund to the second party all moneys paid.

The record clearly shows that neither one of the parties to the contract complied with the provisions of the contract, in that they did not attempt to carry out the obligations upon either one of the parties, but the record does show that the appellants have retained the $500, and have never tendered to the plaintiff the $500 paid at the time the contract was executed, and the plaintiff has refused to surrender the

possession of the land she was in possession of by reason of the contract, or to account for the rents and profits of the property during the period from the time the contract was made up to the time of trial. The trial court in his findings and decree has attempted to place the parties *in statu quo* at the time the contract was executed.

It is apparent in this case that the contract was void on the part of the appellants because of promises made by the appellants, inasmuch as it is admitted by the evidence that the appellant was not the owner of part of the property conveyed by the contract, and that such land was government land, unsurveyed; and that no definite land was agreed upon as definitely settled by the contract, and that in fact the land to be conveyed was not described by the contract as the land intended by either party to the contract, and therefore the contract was void and could not be enforced by either party. (39 Cyc., pp. 1420–1433; *Lamb v. Davenport,* 85 U. S. (18 Wall.) 307, 21 L. ed. 759; *Adams v. Church,* 193 U. S. 509, 24 Sup. Ct. 512, 48 L. ed. 769; *Thredgill v. Pintard,* 12 How. (U. S.) 24, 13 L. ed. 877; *United States v. Barber Lumber Co.,* 172 Fed. 948; *Phillips v. Carter,* 135 Cal. 604, 87 Am. St. 152, 67 Pac. 1031; *Montague v. McCarroll,* 15 Utah, 318, 49 Pac. 418; *Reynolds v. Sumner,* 126 Ill. 58, 9 Am. St. 523, 18 N. E. 334, 1 L. R. A. 327; *Maxwell v. Moore,* 22 How. (U. S.) 185, 16 L. ed. 251; *French's Lessee v. Spencer,* 21 How. (U. S.) 228, 16 L. ed. 97.)

We have examined the verdict of the jury and the findings of the trial judge, and while the evidence is conflicting, we are satisfied that there is sufficient evidence to support the trial judge's findings, except the court erred in his conclusions of law Nos. 5 and 9.

Conclusion of law No. 5 should be modified to read as follows:

That the plaintiff should be charged with the sum of $40.70 for the possession of the land and the benefit of the same during the period she has been in such possession since the time the plaintiff paid $500 on the 24th day of May, 1911, as an offset against the interest which the court finds

in finding of law No. 5, and that plaintiff cannot recover as an offset for the taxes she has paid, inasmuch as she was in possession of the land during the time she paid the taxes and paid the same voluntarily.

Conclusion of law No. 9 should be modified to read as follows:

That the plaintiff should have judgment for the sum of $500 and the costs of this appeal. That the decree should be modified according to the findings as modified in this opinion.

It is therefore ordered that the judgment appealed from be modified as follows:

That the plaintiff is indebted to the defendant in the sum of $40.70 for the possession of the land and the benefit of the same during the period she has been in possession since the time she paid the $500 on the 24th day of May, 1911, as an offset against the interest which the court found in finding of law No. 5; that the plaintiff have judgment for the sum of $500 and the costs of this appeal.

Ailshie, C. J., concurs.

SULLIVAN, J., Dissenting.—I am unable to concur in the conclusion reached by the majority of the court. Under the contract the plaintiff purchased a certain tract of land and it was understood between the seller and the purchaser that certain improvements were on the land purchased, but after a survey it was found that three or four acres of the land in question containing some of the improvements were not on the land described in the contract of purchase. As soon as that was ascertained, the seller offered to scrip the land and convey to the purchaser a good title to the land on which that part of said improvements were situated so that the purchaser would get the land she purchased with all improvements that she had contracted to purchase. But for some reason, as soon as she ascertained that all of the improvements were not on the land described in the contract, she refused absolutely to purchase said land and take a good

title thereto. The record shows that the seller, the defendant, acted in perfect good faith in this transaction and that there was no deception or misrepresentation on his part. He informed the purchaser at the time she examined the land that he did not know whether the lines were located.

The clear intent of the contract of purchase was to get the land on which all of the improvements were situated, and it was not an essential part of the contract, sufficient to defeat it, if a good title to all of the land did not come through the grantor or grantors that were at first contemplated by the contract. The seller offered to convey to her a good title to all of the land she purchased, containing all of the improvements and to convey to her a good title within the time required by the contract. She was offered just what she purchased with a perfect title and it is clear to me that the contract ought to be enforced against her.

Then again: She has had possession of the land for about two years, and the evidence clearly shows that the rental value of that land was $150 per year, or $300 for the two years. She having had the use of the land, the rental value ought to be applied on the $500 payment made by her to the seller in case she is permitted to repudiate the contract.

There is no equity in favor of the respondent, the purchaser. She ought to be required to take said land since a good title has been offered to her. The judgment ought to be reversed.