(No. 6880.    April 29, 1941.)

MARIANNA OWEN, Respondent, v. EVERETT TAYLOR, by C. E. Taylor, his guardian ad litem, Appellant.

[114 Pac. (2d) 258.]

REHEARING DENIED JUNE 23, 1941

Elam & Burke, for Appellant.

George Donart and Norris & Kenward, for Respondent.

HOLDEN, J.—The accident out of which this litigation arose happened near Ontario, Oregon, May 12, 1938. This action was commenced in the district court of Payette County, Idaho, July 15, 1939. February 8, 1940, respondent filed an amended complaint. Appellant answered denying the allegations of gross negligence, but did not plead contributory negligence. The case was tried to a jury; it returned a verdict in favor of respondent for $2500, and judgment was entered thereon. Defendant thereafter gave notice of intention to move for a new trial and later moved for a new trial. The motion was denied. Defendant then appealed from both the judgment and order denying motion for new trial, but did not obtain a certificate of the trial judge as to the papers, records and files used and considered by him at the hearing of the motion for a new trial, as required by rule 23 of this court. March 14, 1941 (just a week before this appeal

was heard), the required certificate was obtained. On the next day an application in re diminution of the record was filed in this court by which appellant seeks to supply such certificate. The application is not supported by any showing whatever.

Appellant relies upon *Gloubitz v. Smeed Brothers*, 52 Ida. 725, 727, 20 Pac. (2d) 198, where this court held:

"Such certificate is not jurisdictional and the failure to include it in the transcript may be corrected before final submission of the case on appeal." (See also: *Steensland v. Hess*, 25 Ida. 181, 136 Pac. 1124; *Smith v. Inter-Mountain Auto Company, Ltd.*, 25 Ida. 212, 215, 136 Pac. 1125; *Burgess v. Corker*, 25 Ida. 217, 136 Pac. 1127; *Witt v. Beals*, 31 Ida. 84, 169 Pac. 182.)

Respondent relies upon *Sweaney & Smith Co. v. St. Paul Insurance Co.*, 35 Ida. 303, 313, 206 Pac. 178, where we held:

"Therefore the appellant, if he fails by his praecipe to require papers, records and files sent up for review, it is his error and he cannot thereafter by suggestion of diminution of the record, bring up to this court such papers, files and records. In such a case a suggestion of the diminution of the record would only justify bringing up to this court omitted portions of the judgment-roll or a bill of exceptions filed in the case. It is also clear that after the record has been filed in this court, appellant cannot be permitted to file an amended praecipe, designating therein certain papers, records or files which it failed to include in the original praecipe, for the reason that it cannot complain of its own error." (Approved and followed in *Douglas v. Kenney*, 40 Ida. 412, 418, 233 Pac. 874. See also: *Bedford v. Gem Irrigation District*, 51 Ida. 105, 106, 4 Pac. (2d) 366; *Eldridge v. Payette-Boise W. U. Assn.*, 50 Ida. 347, 296 Pac. 1022; *Newby v. City of St. Anthony*, 48 Ida. 608, 284 Pac. 1028.)

As just pointed out, no showing whatsoever is made as to why the required certificate was not obtained in the first instance and included in the praecipe and record, nor as to why the making of the application was delayed until a few days before the appeal was heard by this court. Hence, the writer takes the view the applica-

tion should be denied, but a majority hold it should be granted and the certificate filed. That brings us at once to appellant's contention the "verdict of the jury was excessive and appeared to be given under the influence of passion and prejudice" for the reason it is insisted the injuries suffered were slight and temporary. The evidence, briefly, is as follows:

That respondent received a long laceration in her left leg and a smaller one in the right leg; that the left leg was split open leaving the fat of the leg visible; that the cut on the right leg appeared as if dug out with a spoon quite deep; that the injuries were very painful and that respondent spent five days in bed under a doctor's care; that the wounds were treated with hot boric acid, causing her a great deal of pain; that her right leg pained respondent for over a year; that the knee was numb to feeling, so numb in fact that when a pin was "stuck" into the knee she did not feel it; that respondent also "received a stiff neck" and injury to the lower part of her back, the latter continuing up to the time of trial, about two years later; that respondent worked in a bakery the summer following the accident; that whenever respondent had to stoop her back pained her; that while working for room and board at McMinnville, Oregon (where she attended college), respondent had to vacuum and do housecleaning, both of which made her back ache, and that sitting for long periods of time caused her trouble with her back; that respondent had never had any trouble with her back before; that the doctor advised dancing, bicycling and hiking; that respondent participated in the junior-senior banquet and dance seven days after the accident, and the next day attended and participated in commencement exercises at the high school; that while working in a bakery respondent made few complaints, never directly to her employer, but that he did know she was taking treatments for her back; that when respondent first visited the doctor she made no mention of her neck and back injuries; that respondent took part in regular school activities the following school year at New Plymouth high school and at Linfield College a year later, and that she made no particular complaint while

attending college, either to instructors or at places where she stayed; that one woman for whom respondent worked recalled no complaints as to her back, but that another remembered respondent complained of her back when using a vacuum which required her to stoop.

Luciele Owen (respondent's mother) testified her daughter's legs had been crushed open; that she complained of stiffness in her legs, and that it was hard for respondent to get around; that respondent complained of trouble and pain in her back and neck; and that respondent could not shampoo her hair or do general housework inasmuch as stooping caused trouble with her back.

Dr. Sol Catron (called by respondent) testified respondent suffered a subluxation of the fifth lumbar vertebrae; that his treatment would restore it to normal position, but that he was not positive it would stay in position correctly—he termed the injury an incomplete dislocation which would probably recur.

Dr. Radney Belknap (a witness for appellant), who treated respondent after the accident, said she received two small cuts requiring sutures; that she first complained of her back June 7, when brought in for x-rays; that respondent suffered only a few minor bruises and cuts, which cuts were not deep but did require stitches.

It will be noted there is evidence respondent's left leg was split open leaving the fat of the leg visible; that the cut on the right leg looked as if it had been dug out with a spoon quite deep; that the wounds were treated with hot boric acid, causing great pain; that her right leg pained her for over a year, and that the knee was so numb to feeling that she could not feel a pin when it was "stuck" in her knee; that the effect of the injury to the lower part of her back continued up to the time of the trial. In addition, there is also the evidence of Dr. Catron, who testified respondent suffered a subluxation of the fifth lumbar vertebrae; that his treatment would restore it to normal position, but that he was not positive it would stay in position correctly.

Damages for pain and suffering "are susceptible to proof only with an approximation of certainty, and it is solely for the jury to estimate them as best they can

by reasonable probabilities, based upon their sound judgment as to what would be just and proper under all of the circumstances, which may not be disturbed in the absence of some showing that the jury were biased or prejudiced or arrived at the moment in some irregular manner." (*Reinhold v. Spencer*, 53 Ida. 688, 700, 26 Pac. (2d) 796; *Davis v. Potter*, 51 Ida. 81, 2 Pac. (2d) 318; *McCoy v. Krengel*, 52 Ida. 626, 17 Pac. (2d) 547; *Hayhurst v. Boyd Hospital*, 43 Ida. 661, 254 Pac. 528; *Short v. Boise Valley Traction Co.*, 38 Ida. 593, 225 Pac. 398; *Faris v. Burroughs Adding Machine Co.*, 48 Ida. 310, 282 Pac. 72; *Nelson v. Johnson*, 41 Ida. 697, 243 Pac. 647.)

■ Bearing in mind damages in this class of cases cannot be established with mathematical certainty and that "it is solely for the jury to estimate them as best they can by reasonable probabilities, based upon their sound judgment as to what would be just and proper under all of the circumstances," we cannot say, under the evidence, that the "verdict of the jury was excessive and appeared to be given under the influence of passion and prejudice."

■ It is also contended the court erred in giving instructions Nos. 10 and 11, respectively, in that "the court quoted the statutes on speed limits, and called attention particularly to the fact that said acts were unlawful," and that these instructions "did not give the jury any information as to the distinction between an unlawful act and a negligent act, or an unlawful act or an act of gross negligence." We find, upon an examination of the record, the court correctly instructed the jury on both ordinary and gross negligence. It also, substantially in the language of the statute, instructed the jury on the law of the road. These instructions stated the law and were correct as far as they went, and were not confusing or misleading. As pointed out in *Joyce Brothers v. Stanfield*, 33 Ida. 68, 71, 189 Pac. 1104, "It is provided in C. S., secs. 6847, 6848 and 6849 [now secs. 7-206, 7-207 and 7-208, I. C. A., respectively], that either party may submit to the judge instructions to to the law governing the case and ask that they be given to the jury, ... " If appellant had desired other instructions upon this

feature of the case, it was his duty to present them to the trial court. (*Lessman v. Anschustigui*, 37 Ida. 127, 133, 215 Pac. 460; *Joyce Bros. v. Stanfield, supra; Boomer v. Isley*, 49 Ida. 666, 674, 290 Pac. 405; *Evans v. Davidson*, 58 Ida. 600, 615, 77 Pac. (2d) 661.) Furthermore, as to instructions generally, "if instructions given are correct as far as they go [as in the case at bar], it cannot be assigned as error that the court omitted to instruct on all points involved in the case if the attention of the court has not been directed thereto by special requests for instructions on those points." (*Boomer v. Isley, supra;* see also: *Tyson Creek R. R. Co. v. Empire Mill Co.*, 31 Ida. 580, 174 Pac. 1004; *Hayhurst v. Boyd Hospital, supra; French v. Tebben*, 53 Ida. 701, 27 Pac. (2d) 475.)

It is further insisted the court erred in refusing to give defendant's requested instruction No. 2 on contributory negligence. That there was no evidence to which to apply the requested instruction on contributory negligence is made clear in that the record shows, as will hereinafter appear, that appellant was driving; that he himself testified he did not see the culvert until he got within from 50 to 30 feet of it; that after seeing the culvert he did not have time to even effectively apply his brakes; that respondent was riding in the rumble seat and saw nothing in the road to scare or frighten her. If the instruction had been given, it would have injected into the case an issue—contributory negligence—not presented by the evidence. As held in *Nordquist v. W. A. Simons Co.*, 54 Ida. 21, 27, 28 Pac. (2d) 207, it was

"the duty of the trial court to confine itself to a statement of such principles of law as were applicable to the evidence admitted in support of the contentions of the parties, and thus to aid the jury in arriving at a correct determination of the issues involved, for if an instruction is not thus based on the evidence it is erroneous in that it introduces before the jury issues not presented thereby, and is well calculated to mislead and induce them to suppose that a state of facts constituting such issues existed, in the opinion of the court, under the evidence and might be considered by them. . . .

"And in determining the scope of its instructions the court must keep in mind the issues made by the pleadings in the case [here appellant did not plead contributory negligence], and the evidence adduced in support thereof, and no instruction should be given which tenders an issue that is not supported by the pleadings and such evidence, or which deviates therefrom in any material respect. The theory upon which the rule is founded is that the giving of an instruction outside the issues made by the pleadings tends to mislead the jury into the belief that such an issue is before them and bring them to an improper verdict."

Furthermore, as this court also held in *Preston A. Blair Co. v. Rose*, 56 Ida. 114, 118, 51 Pac. (2d) 209, "requested instructions are properly refused when they are not based on evidence in the case." (See also: *Johnson v. Fraser*, 2 Ida. 404, 18 Pac. 48; *Stine Lumber & Shingle Co. v. Hemenway*, 33 Ida. 384, 194 Pac. 850; *Newman v. Oregon Short Line R. R. Co.*, 34 Ida. 417, 201 Pac. 710; *Carlson v. Ozmun*, 44 Ida. 500, 258 Pac. 1078.)

Finally, appellant contends "the evidence is insufficient to support a verdict in that there is no evidence whatever to establish gross negligence." Respondent testified:

That on the afternoon of May 12, 1938, she was invited to go along with appellant and others on a trip from New Plymouth, Idaho, to an athletic field at Ontario, Oregon; that she made the trip in company with appellant Taylor, Dorothy Bower and Geraldine Oster; that the trip was made in a Ford automobile known as a convertible coupe or roadster; that appellant and Dorothy Bower were in the front seat and respondent and Geraldine Oster rode in the rumble seat; that they made the trip to Ontario for the purpose of attending a ball game and on their return trip were seated in the same manner; that when they left the athletic field and started back to Ontario they traveled the main road from the fair ground a short distance; that in order to avoid the dust being raised on the main highway, they turned off to the left from the highway and took a sort of trail leading into the main part of town; that the road they traveled was not graded, was one set of tracks in width, straight but bumpy, in

fact quite rough all along its course; that the ground was level and the view in front of them along the road was unobstructed; that she did not know the speed at which appellant was traveling, but as far as she could tell, it was the same speed as when traveling on the main highway; that she was not scared or frightened and that she paid no attention to the road and saw nothing in the road to scare or frighten her; that she was not holding on to the side of the seat or anything for the reason there was nothing upon which to hold; that it was less than a half mile from the main highway to the point where accident occurred; that the car came to a culvert across the road and the occupants of the rumble seat were thrown into the air approximately six feet; that they landed in the car again and that respondent received, from the force of the fall, a long laceration in her left leg and a smaller one in her right leg; that she screamed from the time the car struck the culvert until it stopped; that after crossing the culvert the car traveled about 100 yards and around a corner before it came to a stop; that it stopped because of her screaming.

Luciele Owen, respondent's mother, testified appellant, when calling to visit respondent while she was still abed, stated the accident occurred because he could not stop fast enough by putting on his brakes, and that he was afraid to put on his brakes because it might tip the car over.

Appellant testified the top of the convertible coupe was down; that the road which they took in order to avoid heavy dust on the main highway was a one-way road; that he was watching the road carefully; that no one saw the rough spot, and that it was very difficult to see by reason of the fact the surface of the road melted or blended into its surroundings; that the depression was a foot or two below the surface of the road and the rise just beyond it was about 14 inches; that he was traveling approximately 35 miles per hour; that he did not see the depression until he got within 50 to 30 feet of it; that as soon as he observed the place he started to put on his brakes, but allowing for the reaction, did not have sufficient time to apply his brakes effectively before hitting

the rough spot; that he slowed the car down to a speed of about 20 miles per hour, but was forced to ride the depression and raise at that speed; that after he passed some distance beyond the place he heard some one call from the rumble seat; that he inquired if anyone was hurt and was told appellant had been hurt whereupon he turned on the next side street about 100 yards distant from the culvert, learned the extent of respondent's injuries and promptly drove to the doctor's office. He denied making the statement testified to by Mrs. Owen.

Mrs. Bernice Taylor, mother of appellant (called in his behalf), testified respondent said she (respondent) didn't blame appellant at all because he was not to blame; that he was driving very carefully. Respondent denied making this statement.

Section 48-901, I. C. A., provided, at the time the accident occurred (since amended, 1939 Sess. Laws, p. 286) :

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of the said owner or operator or caused by his gross negligence or his reckless disregard of the rights of others."

The statutory law of the State of Oregon, in the absence of pleading or proof to the contrary, as in the instant case, is presumed to be the same as the statutory law of the State of Idaho. (*Mason v. Pelkes,* 57 Ida. 10, 34, 59 Pac. (2d) 1087).

California has a guest statute, the pertinent parts of which provide:

"Any person who as a guest accepts a ride in any vehicle, moving upon any of the public highways of the State of California, and while so riding as such guest receives or sustains an injury, shall have no right of recovery against the owner or driver or person responsible for the operation of such vehicle. . . . Nothing in this section contained shall be construed as relieving the owner or driver or person responsible for the operation of a vehicle from liability for injury to or death of such guest

proximately resulting from the...gross negligence of such owner, driver or person responsible for the operation of such vehicle."

In *Goodwin v. Goodwin et al.* (Cal. D. C. App., 2nd Dist.), 43 Pac. (2d) 332, also a guest case, the court held:

"When liability attaches only for gross negligence it is for the trier of facts to pass upon the question of whether such negligence exists.... It is only where the evidence points unerringly to a conclusion as to whether one is guilty of gross negligence or not that the matter becomes a question of law within the power of an appellate court to decide." (To the same effect: *Cockerham v. Potts et al.*, (Ore.) 20 Pac. (2d) 423; *Tomlinson v. Kiramidjian et al.* (Cal. D. C. App., 4th Dist.), 24 Pac. (2d) 559; *Meek et al. v. Fowler et al.* (Cal. D. C. App., 4th Dist.), 35 Pac. (2d) 410; *Rees v. Chase et al.* (Cal. D. C. App., 2nd Dist.), 38 Pac. (2d) 819; *Frank v. Myers* (Cal. D. C. App., 2nd Dist.), 60 Pac. (2d) 144; *Collins v. Nelson et al.* (Cal. D. C. App., 2nd Dist.), 61 Pac. (2d) 479.)

And this court is committed to the rule it will pass on a question of negligence "only in clear cases," "where the question of negligence is free from doubt." In *Department of Finance v. Union Pacific R. R. Co.*, 61 Ida. 484, 499, 104 Pac. (2d) 1110, we approved the following rule announced in *Newton v. Oregon Short Line R. Co.*, 43 Utah 219, 134 Pac. 567:

"All that can be said is that, unless the question of negligence is free from doubt, the court cannot pass upon it as a question of law; that is, if after considering all the evidence and the inferences that may be deduced therefrom the court is in doubt whether reasonable men, in viewing and considering all the evidence, might arrive at different conclusions, then this very doubt determines the question to be one of fact for the jury and not one of law for the court. The court can pass upon the question of negligence only in clear cases. All others should be submitted to the jury. The reason of this is apparent from the fact that in this state all questions of fact are for the jury; and therefore, unless it is clear that in viewing and considering the evidence reasonable minds might not arrive at different conclusions, the case should go to the

jury." (To the same effect: *Fleenor v. Oregon Short Line R. R. Co.*, 16 Ida. 781, 102 Pac. 897; *Smith v. Oregon Short Line R. R. Co.*, 32 Ida. 695, 187 Pac. 539; *Denton v. City of Twin Falls*, 54 Ida. 35, 28 Pac. (2d) 202; *Call v. City of Burley*, 57 Ida. 58, 62 Pac. (2d) 101; *Bennett v. Deaton*, 57 Ida. 752, 68 Pac. (2d) 895; *Evans v. Davidson*, 58 Ida. 600, 77 Pac. (2d) 661; *Adkins v. Zalasky*, 59 Ida. 292, 81 Pac. (2d) 1090; *Allan v. Oregon Short Line R. R. Co.*, 60 Ida. 267, 90 Pac. (2d) 707; *Byington v. Horton*, 61 Ida. 389, 102 Pac. (2d) 652.)

Under all the facts and circumstances shown by the record, is the question of gross negligence free from doubt? It may be conceded traveling over an oiled, hard-surfaced road of standard width at 35 miles per hour would not be considered excessive or reckless, whereas traveling at the same speed over "a sort of trail" or a road "that was not graded"—just "one set of tracks in width, bumpy and quite rough," with a guest in the rumble seat with nothing "upon which to hold" (as appellant must have known), in case of necessity, to avoid being thrown out of the car and thus seriously injured if not killed, might well, and as a matter of fact, did, lead the jury to the conclusion appellant was guilty of gross negligence. At any rate, we can not say the evidence points unerringly to but one conclusion—that appellant was not guilty of gross negligence—nor can we say the question as to whether appellant was not guilty of gross negligence is "free from doubt"—nor that it is clear "in viewing and considering the evidence reasonable minds might not arrive at different conclusions." Hence, the question of gross negligence was for the jury.

Judgment affirmed with costs to respondent.

Givens, Morgan and Ailshie, JJ., concur.

BUDGE, C. J. (Concurring specially) — The above entitled cause was tried to the court and jury, verdict was in favor of respondents, judgment was entered thereon. Appellant, thereafter, gave notice of his intention to move for a new trial, and duly thereafter moved for a new trial, which was denied. Defendant prosecutes this

appeal both from the judgment and the order denying the motion for a new trial. Appellant failed to obtain a certificate, under rule 23, from the trial judge as to the papers, records and files used and considered by the judge at the hearing of the motion for a new trial; but later, and prior to the hearing of said cause on appeal in this court, obtained the certificate.

There is no showing of prejudice resulting to respondent by the delay, or otherwise, due to appellant's failure to obtain the certificate, as required by rule 23. It is true that there was delay and negligence on the part of appellant by reason of his failure to comply with the rule, and such practice is not to be commended; however, the rule would seem to be well established, that this court will not dismiss an appeal in absence of prejudice to respondent due to the failure on the part of appellant to obtain the certificate, as required, if the same be supplied prior to the hearing of the cause.

In *Smith v. Inter-Mountain Auto Co.*, 25 Ida. 212, the court used the following language:

"Where the transcript on appeal does not contain the proper certificate showing what papers the trial court or judge used on the hearing of the matter presented to him, and a motion is made to dismiss the appeal on that ground, and counsel for appellant asks for permission to do so, and thereafter furnished the proper certificate, the appeal will not be dismissed on that ground." (To the same effect see *Hoover v. Shott*, 182 Pac. 883, 66 Colo. 456.) And to the same effect see *Gloublitz v. Smeed Brothers*, 52 Ida. 725, where the court uses the following language:

"Such certificate is not jurisdictional and the failure to include it in the transcript may be corrected before final submission of the case on appeal."

In the case of *Steenland v. Hess*, 25 Ida. 181, the court held:

"The practice of allowing an amended certificate to a transcript has been established by several cases in this court." (See *Barrow v. B. R. Lewis Lumber Co.*, 14 Ida. 698; *Steve v. Bonners Ferry Lumber Co.*, 13 Ida. 393.)

To refuse to grant the application of appellant to supply the certificate for the reason that the transcript on

appeal did not contain the certificate required by rule 23, but which is supplied prior to the submission of the cause would work a serious hardship upon litigants unfamiliar with the practice or rules of procedure of the courts, and defeat justice.

I concur in the opinion of Mr. Justice Holden, except that portion thereof, holding that the application to supply a certificate under rule 23 should be denied.