(No. 7191. December 21, 1944.)

J. L. O'CONNOR and OLGA O'CONNOR, husband and wife, Respondents, v. JOHN G. MEYER and CECIL NEBELSIECK, Appellants.

[154 Pac. (2d) 174.]

Verner R. Clements for appellants.

Durham & Hyatt for respondents.

HOLDEN, C. J.—January 7, 1943, a Chevrolet automobile owned and driven by Chester Qualey, in which respondent, Olga O'Connor (wife of respondent, J. L. O'Connor), was riding, collided with a forty-two passenger International school bus, owned by respondent John G. Meyer and driven by respondent Cecil Nebelsieck. The collision between the two cars was head-on, occurring at about 4:45 p. m. on the highway between Genesee, Idaho and Uniontown, Washington. As a result of the collision respondent Olga O'Connor sustained alleged serious injuries.

Thereafter, July 8, 1943, this action was commenced by

respondents against appellants Meyer and Nebelsieck to recover damages for the injuries so sustained by respondent Olga O'Connor. December 13, 1943, the cause was tried by the court sitting with a jury. At the conclusion of the submission of the evidence, appellants moved the action be dismissed and judgment of nonsuit entered against the respondents, which the court denied. Thereupon, and before the oral arguments of the cause by counsel for the respective parties, appellants objected to the giving of written instructions before the oral arguments, and appellants also objected to permitting the jury to take the written instructions to their room. On the other hand, respondents at once moved the court to instruct the jury in writing (impliedly) before the oral arguments. Appellants' objections were overruled and denied. Whereupon, and before the oral arguments, the court instructed the jury. The jury returned a verdict in favor of respondents and against appellants and judgment was entered thereon December 16, 1943. The appeal to this court is from the judgment.

■ Appellants assign eleven alleged errors. Those thought to be important and material to a decision of the appeal will be discussed and passed on in the following order:

1. That: "The court erred in instructing the jury in writing prior to argument, and permitting the written instructions so given to be taken by the jury to their room."

In support of the above quoted objections, appellants contend:

"Each litigant is entitled to adopt the procedure afforded him by statute according to his view of the case. There are good reasons in many cases where the time and manner of instructing the jury may vary or exist in different order, which the legislature recognized by providing the statute in question from which the litigant might choose the course of procedure he concluded would be best for his side of the case."

In the case at bar, it will be noted, appellants insisted the court instruct the jury *after* the oral arguments and that respondents insisted the court instruct the jury *before* the oral arguments. Here, then, we have a case where appellants "concluded" that to have the jury instructed after the

oral argument "would be best for his (their) side of the case," but respondents concluded it "would be best for his (their) side of the case to have the jury instructed before oral argument." Of course, the trial court could not do both. We do not think the legislature intended the order of procedure should depend upon which side of a case would receive the most benefit. Nor do we think the legislature had benefits to either or any "side" in mind in enacting sec. 7-206, I.C.A., fixing "unless the judge for *special reasons* otherwise directs," the "order of trial." (Emphasis ours.)

We direct attention to the pertinent provisions of section 7-206, supra. Subdivision 4 provides:

"When the evidence is concluded and before the case is argued or submitted to the jury, either party may request the court to give to the jury instructions in writing on the law arising in the cause which shall be given or refused as asked: provided, that the court may also give other and further written instructions of its own motion. All of the written instructions given shall be carried by the jury to their room for their guidance in arriving at a correct verdict according to the law and the evidence. The instructions shall then be read to the jury by the court, and unless the case is submitted to the jury without argument, the plaintiff must commence and may conclude the argument."

Subdivision 6 provides, in substance, that:

"If either party objects to the giving of written instructions and permitting the jury to take them to their room" that "The court may then charge the jury, according to the provisions of sections 7-207 and 7-208."

Section 7-207, I.C.A., simply, in so far as pertinent here, provides:

"In charging the jury the court may state to them all matters of law which he thinks necessary for their information in giving their verdict. . ."

And section 7-208, I.C.A., covers the matter of "requests for instructions," "where either parts asks special instructions." There is no hint in any provision of either section 7-207 or section 7-208, supra, of an intent on the part of the legislature to abrogate or annul the clear and express pro-

visions of subdivision 4, supra, providing that instructions requested, as well as instructions given by the court, "of its own motion," shall be given "before the case is argued or submitted to the jury," and that "all of the written instructions given shall be carried by the jury to their room for their guidance in arriving at a correct verdict according to the law and the evidence."

And the procedure so fixed by sec. 7-206, supra, must be followed "unless the judge for special reasons otherwise directs," thus wisely vesting the trial judge with power to change the procedure where special reasons appear to exist. It might well be in the trial of a case that there would arise some special reason for changing the order of trial, for instance, by instructing the jury after the oral argument instead of before, and if so, the trial judge could, under the statute, in the exercise of sound judicial discretion vested in him by the statute (sec. 7-206), so order and direct. On the other hand, there are many cases (perhaps in most), where it would be very desirable that the court instruct the jury before oral argument (as the court did in the case at bar,) in order that counsel might, in the course of the oral argument, have the benefit of the views of the trial judge on vitally important questions of law, and at the same time avoid an expression of views in conflict with those expressed by the court, which, if sharp and pronounced, might result in an adverse verdict.

In support of the contention the trial court should have instructed the jury in the case at bar after oral argument instead of before, appellants cite *Byington v. Horton*, 61 *Ida.* 389, 397, 102 P. (2d) 652, and *Schmidt v. Williams*, 34 Ida. 723, 203 P. 1075. In the first case, both appellants and respondents requested the trial court to instruct the jury prior to the argument of counsel. The request was denied by the court on the ground he did not "have his instructions ready at this time, and if I instruct first, it will be six o'clock before the case gets to the jury, . . ." We held the trial court, under those circumstances, acted within its power, holding, "The statute expressly clothes the trial court with power to change the order of procedure where there is a *special reason*, for instance, as in the case at bar, to expedite the trial by requiring counsel to argue the case while the instructions were being prepared." And in *Schmidt v. Williams*, supra, no objection was made to the

order of procedure adopted by the trial court, as this court pointed out, hence, the question before us now was not presented to the court in that case.

Moreover, appellants have not shown or pointed out wherein they were prejudiced by the procedure followed by the trial court in the instant case. Error is never presumed on appeal and the burden of establishing error is upon the party alleging it. (*Judy v. Reilly Atkinson & Co., Inc.*, 59 Ida. 752, 757, 87 P. (2d) 451; *State v. Snoderly*, 61 Ida. 314, 319, 101 P. (2d) 9.)

2. That "The court erred in refusing defendants' (appellants') requested instruction No. 5 because the court by the giving of instruction No. 8 and instruction No. 11 submitted and defined the issues of sudden emergency and unavoidable accident."

Appellants do not complain the court incorrectly instructed the jury on those issues nor that the instructions were not sufficiently full and complete. Their complaint apparently is that because the court gave those instructions "and defined the issues of sudden emergency and unavoidable accident," the court should have also given the jury their requested instruction on the same issues. There is no merit in this assignment.

3. That "The court erred in refusing to give defendants' requested instruction No. 7, requested instruction No. 3 and requested instruction No. 10, after the giving of instruction No. 11."

By instruction No. 11, the trial court instructed the jury that:

"Among other things, it is claimed by the defendants in their answer that the collision of the motor vehicles was an unavoidable occurrence. An unavoidable occurrence or an unavoidable accident is such an occurrence as, under all the circumstances, could not have been foreseen or anticipated in the exercise of ordinary care. It is such an accident as is not occasioned in any degree, remotely or directly, by such want of due care as the law holds every person bound to exercise."

Again, it will be observed appellants do not complain that instruction No. 11 does not correctly state the law nor that

it is not sufficiently full and complete on the issue of "unavoidable accident." It is complained only that having given the instruction on "unavoidable accident," the court should have also given requested instructions Nos. 3, 7 and 10. Requested instruction No. 3 covered the issues of negligence and want of ordinary care. But it appears that by instructions numbered 3 and 4, the court fully and correctly instructed the jury on those issues. Appellants' requested instruction No. 7 was directed to the issue as to whether the collision constituted an "unavoidable accident," stating that: "If neither the driver of the automobile in which the plaintiff was riding, nor the defendants were guilty of negligence, the plaintiff cannot recover in this action." The trial court having fully and correctly instructed the jury on that issue by the above quoted instruction No. 11, it very properly refused to give requested instruction No. 7 on the same issue. And appellants' requested instruction No. 10 is but another and additional request for an instruction on the issue of "unavoidable accident," in that appellants sought an instruction that if "neither the defendant Cecil Nebelsieck nor Chester Qualey were negligent," then that no recovery could be had. The trial court, as above pointed out, by instruction No. 11, fully and correctly instructed the jury on that issue and, therefore, properly refused to give that requested instruction.

4. That "The court erred in giving instruction No. 10 as it is against the evidence."
By instruction No. 10, the court instructed the jury in the language of the statute that:

"Upon all highways of sufficient width, except upon one-way streets, the driver of a vehicle shall drive the same upon the right half of the highway and shall drive a slow moving vehicle as closely as possible to the right-hand edge or curb of such highway, unless it is impracticable to travel on such side of the highway. . ." (I.C.A., sec. 48-509).

There is evidence in the record that the highway at the point where and at the time the collision occurred was between 18 and 20 feet wide; that there were ruts from 5 inches to 8 inches deep and from 20 to 24 inches wide and that the collision between the cars occurred in the ruts; that the ruts were in the center of the highway and also that the ruts were on Qualey's (driver of the Chevrolet car) extreme right side of the road. The court, in view of this and other

evidence concerning the ruts, properly instructed the jury in the language of the statute, that the driver of a vehicle shall drive upon his right half of the highway and "as closely as possible to the right-hand edge or curb of such highway, unless it is impracticable to travel on such side of the highway." But whether, under the circumstances disclosed by the evidence, it was impracticable for Nebelsieck, the driver of the bus, to drive it on his own right-hand side of the highway, was for the jury to determine under the evidence. And, moreover, the instruction was based on the evidence above mentioned, as well as other evidence; therefore not error. (*Nordquist v. W. A. Simons Co.*, 54 Ida. 21, 27, 28 P. (2d) 207; *Owen v. Taylor*, 62 Ida. 408, 416, 114 P. (2d) 258.)

Appellants insist that:

"The evidence as a whole and every reasonable inference to be drawn therefrom proves the collision to be of an unavoidable occurrence, and not attributable to the negligence of anyone."

This presents the question as to whether the alleged negligence of appellants was a question for the jury to determine or a question for the court. On this point we direct attention to *Owen v. Taylor*, 62 Ida. 408, 420, 114 P. (2d) 258, where the identical question was presented and we pointed out:

"this court is committed to the rule it will pass on a question of negligence 'only in clear cases,' 'where the question of negligence is free from doubt.' In *Department of Finance v. Union Pacific R.R. Co.*, 61 Ida. 484, 499, 104 P. (2d) 1110, we approved the following rule announced in *Newton v. Oregon Short Line R. Co.*, 43 Utah 219, 134 P. 567:

'All that can be said is that, unless the question of negligence is free from doubt, the court cannot pass upon it as a question of law; that is, if after considering all the evidence and the inferences that may be deduced therefrom the court is in doubt whether reasonable men, in viewing and considering all the evidence, might arrive at different conclusions, then this very doubt determines the question to be one of fact for the jury and not one of law for the court. The court can pass upon the question of negligence

only in clear cases. All others should be submitted to the jury. The reason of this is apparent from the fact that in this state all questions of fact are for the jury; and therefore, unless it is clear that in viewing and considering the evidence reasonable minds might not arrive at different conclusions, the case should go to the jury.' (To the same effect: *Fleenor v. Oregon Short Line R.R. Co.*, 16 Ida. 781, 102 P. 897; *Smith v. Oregon Short Line R.R. Co.*, 32 Ida. 695, 187 P. 539; *Denton v. City of Twin Falls*, 54 Ida. 35, 28 P. (2d) 202; *Call v. City of Burley*, 57 Ida. 58, 62 P. (2d) 101; *Bennett v. Deaton*, 57 Ida. 752, 68 P. (2d) 895; *Evans v. Davidson*, 58 Ida. 600, 77 P. (2d) 661; *Adkins v. Zalasky*, 59 Ida. 292, 81 P. (2d) 1090; *Allan v. Oregon Short Line R.R. Co.*, 60 Ida. 267, 90 P. (2d) 707; *Byington v. Horton*, 61 Ida. 389, 102 P. (2d) 652.)"

 All questions of fact, in this state, whether negligence, contributory negligence or gross negligence are for the jury. In *Owen v. Taylor,* supra (page 420) we approved the holding of the court (equally applicable in a case of negligence) in *Goodwin v. Goodwin* (Cal.), 43 P. (2d) 332, that:

"It is only where the evidence points unerringly to a conclusion as to whether one is guilty of gross negligence or not that the matter becomes a question of law within the power of an appellate court to decide."

 Is it, then, free from doubt that appellants were not guilty of negligence? There is evidence in the record that at the time of the collision the Chevrolet was traveling in ruts on its own extreme right side of the road; that the highway at that point was from 18 to 20 feet wide; that the head-on collision between the bus and the Chevrolet occurred in those ruts; that the cars remained in the ruts after the collision; that "it was a nice clear day"; that appellant Nebelsieck had been making two trips a day over the road since September preceding the accident; that a snowplow had gone over the road two weeks before the accident; that it left a roadbed of from 12 to 14 feet: that there was a snowbank on each side of the road a foot high and three to four feet wide; that appellant Meyer drove out to the scene of the accident from Genesee; that upon arrival at the scene of the accident he drove to the left of the Chevrolet and on up to what is called the "Flomer Gate"

and then turned around and drove back; that Meyer then went to get needed tools and help; that when he came back he again drove to the left of the Chevrolet and the bus, again turned at the "Flomer Gate" and drove back.

Might not the jury have reasonably concluded, as it evidently did, if there was room for Meyer to drive past the Chevrolet car on its (the Chevrolet's) left-hand side of the highway in driving on up to the "Flomer Gate," then that there was room for the bus to have passed the Chevrolet because Meyer passed it? In other words, if there was room, to the left (Nebelsieck's right-hand side), on the traveled part of the highway, for Meyer to pass the Chevrolet (and that he did so is not disputed), then, could not Nebelsieck, driving on his own right-hand side, the same part of the highway on which Meyer passed the Chevrolet, also have passed and thus avoided a collision? At any rate, under that and other evidence, we cannot say the evidence points unerringly to but one conclusion—that appellant Nebelsieck, the driver of the bus, was not guilty of negligence, is free from doubt—nor can we say that, under the evidence, reasonable minds might not arrive at different conclusions. Therefore, whether the collision was, or was not, avoidable, was a question of fact, and not a question of law.

And furthermore, whether there was room on Nebelsieck's own right-hand side of the traveled part of the road to pass the Chevrolet car and thus avoid a collision; whether Nebelsieck was guilty of negligence and whether under all the evidence, the collision was unavoidable, were questions of fact for the jury to determine. (*Byington v. Horton*, 61 Ida. 389, 401, 102 P. (2d) 652; *Evans v. Davidson*, 58 Ida. 600, 615, 77 P. (2d) 661; *Asumendi v. Ferguson*, 57 Ida. 450, 460, 65 P. (2d) 713; *Branson v. Northern Pacific Ry. Co.*, 55 Ida. 220, 41 P. (2d) 629; *Judd v. Oregon Short Line R.R. Co.*, 55 Ida. 461, 44 P. (2d) 291.)

At the conclusion of the submission of evidence, appellants moved the action be dismissed and judgment of nonsuit entered against respondents upon the ground "that the collision was an unavoidable occurrence and not attributable to the negligence of anyone." Having held that, under the evidence, the question as to whether the collision was, or was not, avoidable, was not a question of law, but a question

of fact for the jury, disposes of appellants' contention the court erred in denying their motion for judgment of nonsuit.

Finally, it is insisted "the damages are excessive and in such amount as to show they were awarded under the influence of passion and prejudice, and without foundation in reason and in utter disregard of the evidence." Concerning the injuries suffered by respondent Olga O'Connor, two physicians testified in behalf of respondents, Dr. C. J. Klaaren and Dr. William E. Grieve (Dr. Grieve being a specialist in orthopedic surgery), none in behalf of appellant. Concerning respondent Olga O'Connor, Dr. Grieve testified (by deposition):

". . . She was a well-nourished and developed woman, appearing about her stated age of forty. The distal ulna is prominent. And the radius seemed a little short in relation to the ulna. The anterior and posterior surfaces of the ulna were normal. The wrist, at that time, would only dorsiflex fifteen degrees. And the palmar flexion is also limited to fifteen degrees. Radial and ulnar deviation in the wrist is markedly limited and painful. Supination is painful and limited. The fingers and thumb were all stiff and painful. The fourth and fifth metacarpophalangeal joints were practically stiff. The grip in the right hand was very poor. There was rather marked tenderness along the subjacent surface of the ulna for several inches above the wrist."

\* \* \* \*

"Well, I believe she had had a severe comminuted fracture of the radius; probably the styloid process of the ulna was also fractured off. At that time, three months after the injury, the fracture should be entirely healed, but she was evidently suffering from the circulatory disturbance that frequently follows fractures of the wrist. And I concluded that it would probably be several months before she completely recovered and that she might have some permanent stiffness in the wrist and fingers."

Dr. Grieve further testified he had examined respondent Olga O'Connor shortly after the trial of this cause and with respect to that examination, he said:

"Well, the distal ulna is still more prominent than nor-

mal. The dorsiflexion is possible to seventy degrees. That range of dorsiflexion varies in different people, but seventy degrees is fairly good. Palmar flexion is limited to forty degrees. That is still less than normal but it is about all that a person needs for the use of the hand. Radial and ulnar deviation—that is, sideward movement of the hand at the wrist—is about fifty per cent of normal. Supination —that is, turning the palm upward—is somewhat limited. Pronation is normal. The grip is poor, but she can grip on four of her fingers much better than she can on two fingers, because she has difficulty in closing her fingers down now. She has difficulty gripping a small object. The radius seems to be slightly shortened, but the shape of the radius is pretty good. The hand appears slightly displaced dorsally at the wrist compared with the normal, but that is not a severe deformity."

\* \* \* \*

"I think she will still improve some in another six months, but she will have some permanent weakness. She is apt to develop some arthritis in the wrist as time goes on and there is more wear and tear on that joint which has been injured. And I think she will have a permanent partial disability, which will be about ten per cent of that due to loss of the hand at the wrist."

Dr. Klaaren, who was shown the deposition of Dr. Grieve, stated he had read the deposition and agreed substantially with the conclusions reached by Dr. Grieve. It is for the jury to estimate damages as best it can "by reasonable probabilities, based upon their sound judgment as to what would be just and proper under all of the circumstances." In this class of cases, damages cannot be established with mathematical certainty. They "are susceptible to proof only with an approximation of certainty." (*Owen v. Taylor,* 62 Ida. 408, 414, 415, 114 P. (2d) 258; *Reinhold v. Spencer,* 53 Ida. 688, 700, 26 P. (2d) 796; *Davis v. Potter,* 51 Ida. 81, 2 P. (2d) 318; *McCoy v. Krengel,* 52 Ida. 626, 17 P. (2d) 547; *Hayhurst v. Boyd Hospital,* 43 Ida. 661, 254 P. 528; *Short v. Boise Valley Traction Co.,* 38 Ida. 593, 225 P. 398; *Faris v. Burroughs Adding Machine Co.,* 48 Ida. 310, 282 P. 72; *Nelson v. Johnson,* 41 Ida. 697, 243 P. 647.)

We conclude the verdict in the case at bar,

$3,000.00, is not excessive. (46 A.L.R., 1228, at 1244; 102 A.L.R. 1124 at 1143).

The judgment is affirmed. Costs awarded to respondents.

Budge, Givens and Dunlap, JJ., concur.

Ailshie, J., did not sit at the hearing and took no part in the decision in this case.