(Nos. 6851, 6852 and 6853. July 17, 1941)

ELMER PIERSON, Respondent, v. JOHN N. PIERSON, and JOHN PIERSON as Executor of the Estate of Edla Marie Pierson, Deceased, Appellants.

HAROLD PIERSON, Respondent, v. JOHN N. PIERSON, and JOHN N. PIERSON as Executor of the Estate of Edla Marie Pierson, Deceased, Appellants.

VIRGIL PIERSON, Respondent, v. JOHN N. PIERSON, and JOHN N. PIERSON as Executor of the Estate of Edla Marie Pierson, Deceased, Appellants.

(115 Pac. (2d) 742)

Whitla & Knudson, for Appellants.

Wernette & Crowley and Carl Buell, for Respondents.

AILSHIE, J.—The respondents named in the caption hereof are brothers and each prosecuted an action against appellant (their father) for balance due on account of services rendered. The cases were consolidated for trial and the evidence, covering all three of the causes of action, was introduced before the same jury and three separate verdicts were rendered, as follows: For Harold Pierson, $4340.07; for Virgil Pierson, $2777.64; and for Elmer Pierson, $587.63. Judgments were entered on the verdicts and these appeals have been prosecuted therefrom.

Practically all the substantial facts of the case are controverted, so that we can only state the ultimate facts in these cases, upon the assumption that the jury accepted and believed the testimony by and on behalf of the respondents. Based on that assumption, it appears that in 1910 appellant, with his family, moved on a 160-acre homestead, on what was formerly the Coeur d'Alene Indian Reservation, in the vicinity of Worley. The place

was heavily timbered with yellow pine, fir and tamarack. A considerable amount of clearing was done each year until the entire place, with the exception of 25 or 30 acres, was cleared. Eventually more land was purchased until the farm consisted of 320 acres, with other land leased by appellant from time to time. At the time of moving on the homestead, respondents, Harold and Virgil Pierson were nine and two years of age, respectively; Elmer, the third son, was born in 1914. When about 15 years old, Harold left school to help his father, who, it is claimed, promised to give him $25.00 a month, with room and board, to work on the farm. At the end of the second year of high school, Virgil was given the same proposition by his father, he being 19 years of age at the time. The younger son, Elmer, finished high school, and in 1935, the father gave him a like proposition of $25.00 a month, with room and board. The testimony of each son indicates they were to share equally in the place, and that it was to be eventually divided up among them. According to instructions from their father, each kept an account of everything he received, in the way of clothing, money, etc.

From a log house and barn, in 1910, the family, after many years, acquired a good modern residence, fine barn and other outbuildings, equipment consisting of farm-all tractor, combine, grain drill, and other modern farm tools and equipment. The soil on the place was known as the "Sandpoint silt loam type," and "good crops" were raised of wheat, barley, oats, peas, alfalfa and other farm products, and "as high as up to ten and twelve acres of corn a year for ensilage purposes." The boys helped their father put a foundation under the house, put siding on, made two additions, a laundry room, put in plumbing, finished the house inside and out; put in a gravity water system, with a reservoir holding 5,000 gallons, and helped generally with the farm work, etc. They also assisted in doing combine harvesting for other people.

In March, 1939, Edla Marie Pierson, wife of appellant and mother of respondents, died, and appellant, John N. Pierson, was appointed executor of her estate. For a few weeks the father and respondents did the housework,

employing a neighbor woman once or twice a week to clean house and do some baking. Finally a Mrs. Brown was employed by Pierson to keep house for them. Respondents informed their father they didn't approve of the woman; that she wasn't the type they liked to have around; whereupon the father told them all to get out. He gave each of them a check for $25.00 and told them that was all they would get.

By the original contract as alleged by respondents, they were to be paid $25.00 per month and be furnished their room and board; and respondents should receive all Pierson's interest in the lands and personal property he might possess at the time of his death; and that if anything was still owing on the $25.00 per month wages, that should first be paid out of his estate. It was then alleged that appellant violated and repudiated the contract and rendered it impossible for respondents to further comply therewith, when he refused, May 10, 1939, to allow them to longer remain in his home or on his premises; and for the latter reason, they claimed the right to recover on a *quantum meruit*, for services rendered after reaching their majority.

Many errors have been assigned but they may properly be reduced to the following objections:

(1) That the complaint does not state a cause of action against the executor of the estate of Edla Marie Pierson, deceased; nor against Pierson individually;

(2) In the admission of certain evidence and rejection of other evidence relating to the value of the personal and real property, owned by appellant John Pierson;

(3) The action of the court in making certain comments in the course of the trial;

·(4) In refusing to give some thirteen requested instructions; and

(5) The insufficiency of the evidence to sustain the verdicts.

We will consider the case, for the purposes of this opinion, under the foregoing enumeration.

■ (1) It is contended that the demurrer should have been sustained as to the complaint against the estate of Edla Pierson, for the reason that the alleged indebted-

ness, sued upon and embraced within the claim presented against the estate, appears on the face of the complaint to have been a community debt contracted by the husband (John N. Pierson), for which the wife's estate was not personally liable.

Admittedly, the contract sued upon was contracted by the husband and was purely a community debt; and no individual judgment could have been obtained against the estate for the claim. However, the indebtedness, if found to exist, was a charge against the entire community property and collectible out of the community estate, without, or independent of, any administration of the estate. Sec. 14-113, I. C. A., provides:

"Upon the death of either husband or wife, one-half of the community property shall go to the survivor, subject to the community debts, and the other half shall be subject to the testamentary disposition of the deceased husband or wife, in favor only of the survivor, the children, grandchildren or parents of either spouse, or one or more of such persons, subject also to the community debts: provided, that not more than one-half of the decedent's half of the community property may be left by will to a parent or parents, unless limited to an estate for life or less; and provided further that any part of decedent's share in excess of the unencumbered appraised value of $25,000 may be disposed of as the testator sees fit.

"In case no such testamentary disposition shall have been made by the deceased husband or wife of his or her half of the community property, it shall go to the survivor, subject to the community debts, the family allowance and the charges and expenses of administration: provided, however, that no administration of the estate of the wife shall be necessary if she dies intestate, except as provided in section 14-114."

It will be seen, from the foregoing statute, that, upon the death of one of the spouses, one-half of the community property, "subject to the community debts," vests in the survivor and the other half descends according to testamentary disposition, or, in the absence of a will, to the surviving husband or wife, "subject also to the community debts." Whether it was *necessary* to present a claim and

prosecute an action against the estate, on a community obligation like the one sued upon, is not before us and we do not deem it necessary or proper to pass upon that phase of the statute. On the other hand, it was not improper to present such a claim to the executor and to join the executor as a party defendant in a suit against the surviving husband to recover a community obligation; this, for the reason, that any judgment obtained on such a claim is collectible out of the *entire community estate* and for that reason the estate of the deceased member of the community, the heirs, legatees and beneficiaries, are interested in defending against such a claim, because of the fact that the collection thereof will diminish the estate's share of the community, to the extent of the recovery. It is therefore thought that the executor was a *proper* party defendant and that the demurrer was properly overruled.

It has been argued that, under the authority of *Kohny v. Dunbar,* 21 Idaho 258, community property of a decedent is administered as a community partnership; and that, upon the death of the wife, the community estate must be administered in the same manner and under the same procedure as applies to partnership estates, under sec. 15-806, I. C. A. While the death of one of the spouses dissolves the "marital community," it does not leave the estate in the condition of a partnership business, where one of the partners dies. Here we have a case where the survivor of the marital community (the husband), had the management and control of the community estate and business during the lifetime of the wife; and he is personally liable for the community debts, and the whole of the community property is liable therefor.

Verdicts and judgments in these cases run against both "John N. Pierson and John N. Pierson, as Executor of the Estate of Edla M. Pierson, deceased, and each of them." As heretofore indicated, the facts of these cases will not justify a judgment against the estate, except in so far as the estate of deceased has profited from the *community* property. These judgments can not be collected from the *separate* estate of the decedent, for the

reason that the wife was not *personally* liable for the debt in her lifetime and her separate estate is not liable in the hands of her executor, heirs or beneficiaries. *Bank of Commerce v. Baldwin,* 12 Idaho 202; *Kohny v. Dunbar, supra; Roberts v. Hudson,* 49 Idaho 132; *Rogers v. Natl. Surety Co.,* 53 Idaho 128, 134; *Ness v. Coffer,* 42 Idaho 78; *Thomas v. Young,* 42 Idaho 240; *First Natl. Bank of Pocatello v. Poling,* 42 Idaho 636, 645; *McFarland v. Johnson,* 22 Idaho 694, 700.

(2) It is next contended that error was committed in permitting certain witnesses to testify as to the lump sum value of personal property and real estate accumulated by appellant during the period of respondents' employment. In this connection, it must be remembered that the value of any or all of the property owned by Pierson was not the issue before the court or upon which the jury was to pass. The real issue was the reasonable value of the services of these respondents and the court so instructed the jury at the conclusion of the trial. The court so advised the jury at different times during his instructions; for illustration: In instruction No. 7-A, he told them:

"You are instructed that in this case the claim of the plaintiffs, and each of them, is based upon what is called a quantum meruit. That is what the services, rendered by the plaintiffs, under the circumstances under which they were rendered, were reasonably worth";

and again in 7-B he said: "The whole claim of the plaintiffs is based upon their contention as to what their services were reasonably worth." The controversy over the value of the property seems to have really arisen out of appellants' answer, wherein Pierson alleged, at length, the work performed on the place, the nature of the services rendered by respondents and the lack of value in the services rendered, and the nature and value of the property accumulated.

The court instructed the jury as to the nature of these allegations and as to the contention made by appellant, with reference to the value of the services rendered and the property acquired through or by their services. The evidence, therefore, with reference to the character of

appellants' property, the times at which it was acquired and the value thereof, was only a collateral matter, evidently introduced for the purpose of showing the value, or lack of value, in respondents' services. We fail to find wherein it can be said that the admission of this evidence was prejudicial to appellants, or that the rejection of the testimony of Mr. Johnson prejudiced Pierson's rights before the jury.

(3) Error is assigned on account of certain remarks by the court in reference to the action of counsel and the testimony of certain witnesses, in the course of the trial. We find nothing prejudicial in the record in that respect. Moreover, no exception was taken to the action complained of and, under the established rule of this court, we can not review such matters unless objection and exception were taken. *Towne v. Northwestern Mutual Life Ins. Co.*, 58 Idaho 83, 94; *Slusser v. Aumock*, 56 Idaho 793, 796; *State v. Freitag*, 53 Idaho 726; *State v. Smailes*, 51 Idaho 321, 327; *State v. Frank*, 51 Idaho 21, 27; *State v. Keyser*, 38 Idaho 57, 59.

(4) Appellants assign as error the refusal of the court to give their requested instructions 2 to 14, both inclusive. We have examined the requested instructions and also the instructions given by the court.

The court covered the issues in the case very fully and fairly in his instructions and covered all the questions properly raised or presented by appellants' requested instructions. Part of these requests are correct statements of the law, while others were either erroneous or inapplicable, under the facts presented by the evidence.

Appellants' requested instruction No. 2 was properly denied, for the reason that it was immaterial as to whether the housekeeper or cook, whom Pierson employed, was married, single or divorced. The evidence with reference thereto was merely a collateral circumstance disclosed in establishing the reason, or lack of reason, for repudiation of the contract which respondents claim was originally made.

Appellants' requested instruction in reference to the presumption, in the absence of express contract, that

adult children remaining with their parents, after their majority, and rendering service, are doing so gratuitously, was fully covered by the court's instruction.

It is deemed unnecessary for us to here discuss any other separate request.

(5) The evidence comprises two volumes and it would be not only impractical but useless to attempt to review it in an opinion. It is conflicting in most of the essential phases of the case; but there is ample evidence (which the jury evidently believed) to support the verdicts rendered.

 Under this branch of appellants' argument, it is contended that respondents never carried out their oral contract as alleged and for that reason they have not made out their case. In reply to that contention, counsel for respondents contend that they have not only established the original contract but that they have shown that the father rendered it impossible for them to carry out the contract, by requiring and compelling them to leave his premises and to consequently discontinue the service; and that in such case they were entitled to recover on a *quantum meruit*. As we understand the record, the evidence introduced is sufficient to support and sustain respondents' contention in this respect. It hardly requires citation of authority in support of the proposition that, where one party to a contract for services renders it impossible for the other party to carry out the contract, the latter may recover on a quantum meruit for the services rendered up to the time of the breach. *Spaulding v. Coeur d'Alene Ry., etc., Co.,* 5 Idaho 528, 536; *Weeter v. Reynolds,* 48 Idaho 611, 617.

The judgments against appellant John N. Pierson are affirmed. The judgments against John N. Pierson, as Executor of the Estate of Edla Marie Pierson, are reversed, except in so far as they establish and adjudicate the claims against the community estate of Edla Marie Pierson and John N. Pierson. No costs awarded.

Budge, C.J., and Givens, Morgan and Holden, J.J., concur.