192 P.2d 383

COGSWELL et ux. v. C. C. ANDERSON STORES CO.

No. 7383.

Supreme Court of Idaho.

April 1, 1948.

Marshall Chapman and Lawrence B. Quinn, both of Twin Falls, for appellant.

Rayborn & Rayborn and Harry Povey, both of Twin Falls, for respondents.

HOLDEN, Justice.

This is an action to recover damages for personal injuries sustained by respondent

Ella J. Cogswell, wife of respondent F. L. Cogswell, as the result of a fall at the exit of a store owned and operated by C. C. Anderson Stores Company (hereinafter called the Company), at Twin Falls, Idaho. The Company operated its store in a building leased by it from Lulu Herriott, the owner. At the beginning of the trial, on motion, Lulu Herriott, made a defendant in the action along with the Company, was dismissed, judgment of dismissal being later entered.

The action continued against the Company and was tried on the complaint of respondents, F. L. Cogswell and Ella J. Cogswell, and the answer thereto of the Company. The Company's answer denied all the material allegations of the complaint, and then and by further answer alleged that "Ella Cogswell's fall and injury, if any, sustained by her, was caused by her own negligence and carelessness, and by her failure to observe her surroundings."

The cause was tried by the court sitting with a jury. The jury returned a verdict against the Company for general and special damages in the sum of $13,165.60. From the judgment entered on the verdict the Company appeals to this court.

It appears from the record that about five o'clock in the evening of October 20, 1945, respondent Ella J. Cogswell entered one of appellant's Twin Falls stores to pick up some curtains purchased a few days before. The store has two entrances, one on Second Street West and the other on Second Avenue West. Respondent Ella J. Cogswell entered the store through the Second Street West entrance. After about ten to fifteen minutes, being unable to find a clerk, and noticing an exit on Second Avenue West, she decided to leave the store through that exit, and, while passing through the exit, fell, sustaining certain injuries, to recover damages for which this action is prosecuted. The exit consisted of "two little swinging [glass] doors", with a solid strip at the bottom ten inches in height. It was lighted. The glass extended down the door to within from ten to twelve inches of the bottom, the doors being practically flush with a six-inch step down. Where one was going out there was no guard rail or anything to hold onto or any sign or warning at or near the exit to call attention to the doors and the abrupt step down.

While the Company specifies twenty-two errors, it argues and cites cases in support of only five. We will discuss the latter in the order stated by appellant:

"(1) The insufficiency of the evidence to establish any negligence on the part of the appellant, C. C. Anderson Company, a corporation".

Respondent Ella J. Cogswell, insofar as material on the question of the insufficiency of the evidence, testified on direct examination:

"Q. And how long would you say you were in the store? A. Not over ten or fifteen minutes.

"Q. And then did you leave the store? A. Yes.

"Q. By what entrance did you leave? A. The Second Avenue entrance, across from the Canal Company.

"Q. And are there swinging doors at that entrance? A. Yes.

"Q. Were you carrying anything when you went out there? A. No.

"Q. What happened when you went out the door, Mrs. Cogswell? A. Well I just hardly know, I just fell, just fell right out on the street.

"Q. You never had been out that door before? A. No.

* * * * * *

"Q. Was there any sign there of any kind that you saw?

* * * * * *

"A. No, there was none.

"Q. No sign there. Do you know whether or not there is any guard rail or anything to hold to as you go out that door?

* * * * * *

"A. No.

* * * * * *

"Q. Do you recall whether or not the door—that you come out of are glass or whether they are solid doors at the C. C. Anderson Company there? A. Well I just couldn't say for sure.

"Q. Did you see any step that steps down directly after the door opens? A. No."

On cross-examination, she testified:

"Q. And you say these doors were glass doors? A. I haven't said because I didn't look at them.

"Q. Well I misunderstood you then, I understood you to tell Mr. Rayborn that the doors, the swinging doors there were glass doors. A. I am not sure.

"Q. You don't know whether they were glass doors or not? A. No.

"Q. If they were glass doors you have no recollection of having looked through those glass doors? A. No.

"Q. So far as you know they could have been glass or they could have been solid? A. Yes.

"Q. You went through the doors and how soon did you fall after you went out of the door Mrs. Cogswell? A. Well I guess right away, I haven't any recollection. I know I was on the sidewalk as soon as I—.

"Q. Went out the door? A. Yes.

"Q. And how far away were you Mrs. Cogswell when you first saw the doors? A. What was that?

"Q. You said you wandered around the store and you came to this Second Avenue door there and decided to come out them, how far away were you when you first saw those doors, from the doors? A. Not very far, I couldn't say.

"Q. Well were you by the counter when you saw that or the hall? A. No, I think there was some clothes hanging up there.

"Q. And you were looking at those? A. Yes.

"Q. And then you glanced over and saw this door? A. Yes.

"Q. And can you give us your best judgment how far away were you from the doors then? A. Oh I don't know that I could say, about eight or ten feet, I couldn't say.

"Q. And then after you noticed the doors and decided to go out the doors you walked this eight or ten feet or whatever that distance was to the doors? A. Yes.

"Q. And then you opened the swinging doors, you could tell they were swinging doors? A. No. I couldn't tell for sure. I knew they opened out.

"Q. The doors were closed? A. Yes.

"Q. And you walked this eight or ten feet to the door and then pushed it out? A. Yes.

"Q. But you have no recollection now of having observed whether the doors were glass or solid? A. No.

"Q. You don't have any recollection now of having observed that there was a difference in elevation from the floor you were walking on and the outside walk as you walked this eight or ten feet? A. No.

"Q. Do you remember seeing the sidewalk at all as you went out the door? A. No.

"Q. You have no recollection of having seen the sidewalk? A. No."

The Company insists the evidence is insufficient to establish actionable negligence and, further, that the trial court erred in denying its motion for a nonsuit and in refusing to direct the jury to return a verdict in favor of the Company. That presents the question as to whether the alleged negligence of the Company was a question for the jury to determine or a question for the court. This court is committed to the rule it will pass on a question of negligence only in clear cases where the question of negligence is free from doubt, and, therefore, "unless it is clear that in viewing and considering the evidence reasonable minds might not arrive at different conclusions the case should go to the jury," and that it is only where the evidence points unerringly to a conclusion as to whether one is guilty of negligence or not that the matter becomes a question of law within the power of an appellate court to decide (O'Connor v. Meyer, 66 Idaho 15, 23, 24, 154 P.2d 174, and cases therein cited); and, further, on the question of the insufficiency of the evidence, the Company directs our attention to the testimony of Stewart Swan, part time city building inspector of Twin Falls, to the effect he was familiar with the store building in question and that there were numerous types of entrances to public buildings in Twin Falls which were the same as the entrance to the store of the Company involved in this case. In making a comparison between the entrance to the building in question and

other public buildings in Twin Falls, Mr. Swan testified:

"Q. And that [the entrance to the store in question] is not unusual or out of the ordinary type of entrance to a store where that condition exists? A. No."

And attention is directed to certain pictures of entrances to various business buildings in Twin Falls taken by a photographer, O. A. Kelker, claimed to be similar to the Second Avenue West entrance of the Company's store. The record discloses Mr. Kelker was cross-examined concerning the above mentioned pictures (exhibits 3 to 26), and that at the conclusion of the cross-examination he was asked the following question and made the following answer:

"Q. In other words, none of those 26 exhibits that I have shown you has a door that is setting flush with the opening? A. No."

■ It should be stated here that the Company's exhibit 2 shows the step down to be flush, or practically so, with the swinging doors at the Second Avenue West exit where the accident occurred. Hence, under the rule announced by this court in Hall v. Boise-Payette Lumber Co., 63 Idaho 686, 691, 125 P.2d 311, another storeroom case, whether the swinging glass doors did, or did not, open abruptly over the six-inch step down to the sidewalk; whether the six-inch step down to the sidewalk could, or could not, by the exercise of reasonable and ordinary care, be seen by one passing out through the swinging glass doors; whether the ten–twelve inch solid base of such swinging glass doors could, or could not, by the exercise of reasonable and ordinary care, be seen by one passing through such doors; whether the maintenance of the swinging glass doors without an inside handrail or other devise to take hold of; whether the maintenance of such swinging glass doors, without a landing on the street side; whether failure to maintain a sign or warning at or near the exit to call attention to the swinging doors and abrupt stepdown, constituted negligence on the part of the Company, were questions for the jury.

■ Furthermore, where, on all the facts and circumstances, different minds might reach different conclusions on the question as to whether the Company was guilty of negligence in the matter of the maintenance of the Second Avenue West exit, we have uniformly held that "where such is the case, however meager the evidence, if it is of a substantial nature and character * * *, the findings of the triers of fact should prevail." Fenton v. King Hill Irrigation Dist., 67 Idaho 456, 186 P.2d 477, 482; Smith v. Clearwater County, 65 Idaho 271, 278, 143 P.2d 561, 563; In re Estate of Randall, 58 Idaho 143, 146, 70 P.2d 389; McKissick v. Oregon Short Line R. Co., 13 Idaho 195, 89 P. 629; Flecnor v. Oregon Short Line R. Co., 16 Idaho 781, 803, 102 P. 897; Denton v. City of Twin Falls, 54 Idaho 35,

43, 28 P.2d 202; Call v. City of Burley, 57 Idaho 58, 69, 62 P.2d 101.

■ In the case at bar we can not say the question of the negligence of the Company is free from doubt, nor that the evidence points unerringly to the conclusion the Company was not guilty of negligence, nor that reasonable minds might not arrive at different conclusions.

"(2) Contributory negligence of the respondent, Ella J. Cogswell".

In support of that specification of error, the Company quotes the following testimony given by respondent, Ella J. Cogswell, on direct examination:

"Q. Did you work with your flowers and garden? A. Yes.

"Q. Did you maintain a garden and flowers in your yard? A. Well a few, not many.

"Q. How did you walk prior to that time? A. Fine.

"Q. Was you crippled or injured in any way prior to the 20th of October? A. No.

"Q. Had you ever been in the hospital before that time? A. No.

"Q. How was your eyesight? A. Fine. Of course I had to wear glasses.

"Q. You wear glasses but your eyesight is good and was good before that time? A. Yes."

The Company also quotes her testimony given on cross-examination, as follows:

"Q. You went through the doors and how soon did you fall after you went out of the door Mrs. Cogswell: A. Well, I guess right away, I haven't any recollection. I know I was on the sidewalk as soon as I—.

"Q. Went out the door? A. Yes.

"Q. And how far away were you Mrs. Cogswell when you first saw the doors? A. What was that?

"Q. You said you wandered around the store and you came to this Second Avenue door there and decided to come out them, how far away were you when you first saw those doors, from the doors? A. Not very far, I couldn't say.

"Q. Well were you by the counter when you saw that or the hall? A. No. I think there was some clothes hanging up there.

"Q. And you were looking at those? A. Yes.

"Q. And then you glanced over and saw this door? A. Yes.

"Q. And can you give us your best judgment how far away were you from the doors then? A. Oh I don't know that I could say, about eight or ten feet, I couldn't say.

"Q. And then after you noticed the doors and decided to go out the doors you walked this eight or ten feet or whatever that distance was to the doors? A. Yes.

"Q. And then you opened the swinging doors, you could tell they were swinging

doors? A. No, I couldn't tell for sure. I knew they opened out.

"Q. The doors were closed? A. Yes.

"Q. And you knew the doors opened out? A. Yes.

"Q. And you walked this eight or ten feet to the door and then pushed it out? A. Yes.

"Q. But you have no recollection now of having observed whether the doors were glass or solid? A. No.

"Q. You don't have any recollection now of having observed that there was a difference of elevation from the floor you were walking on and the outside walk as you walked this eight or ten feet? A. No.

"Q. Do you remember seeing the sidewalk at all as you went out the door? A. No.

"Q. You have no recollection of having seen the sidewalk? A. No."

Having quoted the above testimony of respondent, Ella J. Cogswell, the Company says:

"We realize that the evidence must establish facts which are reasonably susceptible of no other interpretation than that the conduct of the respondent, Ella J. Cogswell, caused or contributed to the injury complained of, and because of such acts of negligence and carelessness she did not act as a reasonably prudent person would have acted under like circumstances. However, when such evidence does so establish, such facts do become a question of law for the Court, and the case should not have been submitted to the jury."

In support of its contention, respondent Ella J. Cogswell was guilty of contributory negligence as a matter of law, and that to avoid injury a person must use his own faculties, the Company cites numerous cases from other jurisdictions—railroad, automobile, street crossing, elevator, lavatory, and others. Regardless of what the rule may be in other jurisdictions, in this jurisdiction, evidence of contributory negligence, like evidence of negligence, must be free from doubt, must point unerringly to the conclusion, respondent Ella J. Cogswell was guilty of contributory negligence and, further, that reasonable minds might not arrive at any other conclusion. For the general rule, see Pipher v. Carpenter, 51 Idaho 548, 550, 7 P.2d 589, and cases therein cited.

However, on the question of the use of one's own faculties to avoid injury, we direct attention to Berland v. City of Hailey, 61 Idaho 333, 338, 339, 101 P.2d 17, 19, a sidewalk case. In that case (as in this) it was contended Olava Berland failed to look and for that reason was unable to testify as to just why she fell or how the accident occurred. And in that case (as in this) it was contended "that there were not sufficient proofs to establish the negligence of defendant [City of Hailey]; and that the evidence conclusively established the negligence of plaintiff

'[Olava M. Berland] as the proximate cause of the accident."

Touching that contention, this court said:

"It appears that respondent was walking along the street in the usual manner of pedestrians, traveling over a sidewalk of a city thoroughfare. The semi-latent danger caused by the crack and upheaval in the walk could be readily observed if one were looking for some such thing. On the other hand, it would be easy for a pedestrian to fail to observe such a defect, especially where the *drop* was sheer and in the direction in which he was traveling. There would be more likelihood of observing such a defect if walking facing the raised edge of the concrete slab than when moving in the opposite direction. [In the case at bar, respondent, Ella J. Cogswell, did not face the step down in passing out the exit. She, too, was moving in the opposite direction].

"Complaint is made by the city that respondent neglected to look and for that reason was unable to testify as to just where she stepped or how her foot struck or caught on the walk, or just the particular point at which she fell. She does say:

" 'I fell on the block of cement that adjoins the block to the north, * * * caught my foot on the edge of that drop and very naturally fell on the slab or block that joins that particular walk I came from.' * * *

"Here the defect was not wholly obvious to the casual pedestrian; it did not loom up as an obstruction. Neither can it be said that it was a latent defect,—it could be seen by one looking for anything of the kind. Under these circumstances, it was a proper issue to be submitted to the jury, as to whether, under the existing circumstances, the respondent was guilty of such contributory negligence as will prevent her recovery. The fact that it is possible that the accident was the result of respondent's inattention and negligence, is not conclusive against her" (Citing cases.)

Furthermore, the burden of proving contributory negligence rests on the party who (in this case, appellant) sets up such defense. Sec. 5-816, I.C.A.; Madron v. McCoy, 63 Idaho 703, 126 P.2d 566.

"(3) The admission of evidence obviously incompetent, and of a damaging nature, of other accidents not meeting the requirements of similarity as to time and place".

In support of that specification, the Company directs particular attention to an early Colorado case, Diamond Rubber Company v. Harryman, 41 Colo. 415, 92 P. 922, 924, 15 L.R.A.,N.S., 775, and to Robitaille v. Netoco Community Theatres, 305 Mass. 265, 25 N.E.2d 749, 128 A.L.R. 592.

The Colorado case [41 Colo. 415, 92 P. 924], it seems, is based upon and adheres to the minority rule. The court, among other things, says:

"If such evidence [of prior accidents similar as to time and place] was admissible, then it would be proper to show that

persons had passed along the sidewalk and had not tripped upon the obstruction", a projecting gooseneck.

However, it does not appear the Massachusetts case, Robitaille v. Netoco Community Theatres, supra, supports appellant, in this: That after a lengthy discussion of the question as to the admissibility of proof of prior accidents, the court holds [305 Mass. 265, 25 N.E.2d 750]:

"Where substantial identity in the circumstances appears, and the danger of unfairness, confusion or undue expenditure of time in the trial of collateral issues reasonably seems small to the trial judge, he has generally been left free to admit such evidence in his discretion", citing cases.

While the Company cites Diamond Rubber Co. v. Harryman, supra, and other cases based upon and adhering to the minority rule, it apparently does not have much confidence in the soundness of that rule, in that at the close of its discussion of its third specification, it says:

"Conceding that evidence of other accidents is admissible under certain circumstances and conditions, we strongly contend that those conditions had not been met in this case, and that on this ground alone the appellant is entitled to a reversal of the judgment."

In 32 C.J.S., Evidence, § 578, the majority or general rule is stated thus:

" * * * the general rule is that the admission of evidence of similar acts or occurrences as proof that a particular act was done or that a certain occurrence happened, rests largely in the discretion of the trial court, provided the conditions are substantially the same. In the exercise of such discretion, the court must consider the extent of the similarity, the presence or absence of modifying circumstances, and the presence or absence of the same essential conditions."

Cases in point are:

Green v. Terminal R. Ass'n of St. Louis, Mo. App., 135 S.W.2d 652, 656:

" * * * We think the testimony falls into that class of evidence the admission or exclusion of which ordinarily rests largely in the sound discretion of the trial court. 22 C.J. § 834, p. 744. The exclusion of evidence of occurrences similar to the occurrence in suit is put on the ground of the practical inconvenience of trying a number of collateral issues at the same time, and the mischief of protracting trials, surprising, and otherwise prejudicing litigants, by permitting the use of evidence well calculated to confuse and mislead the jury. In the exercise of its discretion with respect to the admission or exclusion of such evidence the court must bring to its consideration the extent of the similarity of the occurrence sought to be shown to the occurrence in suit, the presence or not of modifying circumstances, and the presence or not of the same essential conditions. Unless there has been an abuse of discretion on

the part of the trial court, its exclusion of such testimony will not be disturbed on appeal."

Dyas v. Southern Pac. Co., 140 Cal. 296, 73 P. 972, 975: "As to the use of the term, 'similar to the one under scrutiny', the plaintiff had a right to have the jury instructed that they could take into consideration previous accidents similar to the one in question in determining the probable cause of a subsequent one. It is that similarity which permits them to be shown in evidence and considered by the jury. In its general effect this is what the court told the jury. It was stating a general principle of law, and, we think, stated it correctly. Liverpool, L. & G. Ins. Co. v. Southern Pac. Co., 125 Cal. 434, 58 P. 55."

Long v. John Breuner Co., 36 Cal.App. 630, 172 P. 1132:

"In action for injuries by slipping on inclined entrance to store, it was competent to show that other persons had previously slipped and fallen on such incline, as such evidence tended to show the dangerous character of the incline, the cause of plaintiff's fall, and to bring home to the defendant knowledge of the dangerous condition.

"In action for injuries by falling on steep incline at entrance of store, previous accidents on such incline may be shown, if they are similar in their general character, and circumstances need not be shown to be precisely similar."

Gorman v. Sacramento County, 92 Cal. App. 656, 268 P. 1083, 1087: "Appellant next contends that the court erred in permitting respondent to introduce evidence that other accidents had occurred at this bridge; that at least four automobiles had fallen off this bridge into the canal prior to the time the boy was drowned. We think the evidence was properly admitted as tending to show the dangerous character of the bridge and the cause of the boy's death, and, furthermore, it tends to bring home to appellant knowledge of the dangerous condition of said bridge."

Magnuson v. City of Stockton, 116 Cal. App. 532, 3 P.2d 30: "Testimony of previous accidents to establish municipality's knowledge of dangerous condition is admissible though circumstances are not precisely the same, if they are similar in their general nature."

Armstrong v. Yakima Hotel Co., 75 Wash. 477, 135 P. 233: "In an action for injuries to a guest of a hotel by being thrown down a stairway as the result of catching her heel on a protruding brass facing of one of the steps, evidence that 47 days prior to the accident another woman fell from the same cause was admissible to show constructive notice to defendant of the defect; there being no evidence of any change in the stairway in the meantime."

District of Columbia v. Arms, 107 U.S. 519, 2 S.Ct. 840, 845, 27 L.Ed. 618: "The frequency of accidents at a particular place

is good evidence of its dangerous character; and in an action against municipal corporation to recover damages for injuries received from a fall caused by a defective sidewalk, proof that other accidents of the same character have been frequent there, is admissible."

Schmitt v. United States Fidelity & Guaranty Co., 169 Minn. 106, 210 N.W. 846, 849: "The rule is well settled that, in receiving or rejecting evidence of collateral facts, the trial court has a rather broad discretion, and that this court will not readily interfere with the exercise thereof."

Finally, on the proposition that the admission of evidence of prior accidents rests in the sound discretion of the trial court, we direct attention to 128 A.L.R., p. 600 (Annotation, Robitaille v. Necoto Community Theatres, supra, cited by appellant), where many cases are collected. In the case at bar, it does not appear the sound legal discretion vested in the trial court was abused by admitting testimony of prior accidents.

"(4) Erroneous instructions given by the Court and the refusal to give proper instructions submitted by appellant".

It seems clear the only purpose the trial court had in mind in giving Instruction No. 1, complained of by the Company, was to set out the claims of the respective parties, and expressly so instructed the jury:

"You will understand that the foregoing instruction is not intended by the Court to be considered by you as a statement of the evidence in the case, but simply sets out the claims made by the respective parties to the action by their pleading."

The court did not by Instruction No. 1 instruct, or attempt to instruct, the jury on any issue formed by the evidence in the case, nor as to what the evidence in the case was. Furthermore, the court, by Instruction No. 26, instructed:

"* * * Your verdict should be based upon the evidence admitted upon the trial and the instructions of the court applicable thereto and upon nothing else."

It is also insisted Instructions 16 and 19 are so inconsistent and contradictory as to constitute reversible error. By Instruction No. 19 the court instructed the jury, in substance, that maintenance of the street entrance on Second Avenue West at a lower level (six inch step down) than the floor inside, was not in itself negligence, and by Instruction No. 16 the court instructed the jury, among other things, that:

"If you further find that such fall [referring to the alleged accident] and the injuries sustained by her [respondent, Ella Cogswell] were proximately caused by the carelessness and negligence of said defendant, C. C. Anderson Company, a corporation, in providing and maintaining an exit which by reason of its construction was unsafe and dangerous to persons passing through said exit, then your verdict should be for the plaintiffs."

It must be kept in mind the six-inch step down did not, of itself, constitute the exit. There were, for instance, the swinging glass doors. By Instruction No. 16 the court was instructing the jury on the question as to whether the exit, by reason of its construction as a whole (which, of course, included the step down and the swinging doors), was unsafe or dangerous to persons passing through, and by Instruction No. 19, as above pointed out, the court simply, but correctly, instructed the jury that the fact the street, or outside level, was lower than the inside or floor level, did not, of itself, constitute negligence. Furthermore, the Company improperly singles out Instructions 16 and 19, whereas the instructions given by the court must be considered as a whole in determining whether Instructions 16 and 19 were, as contended by the Company, inconsistent and contradictory. Hence, we quote the pertinent instructions of the court:

### Instruction 14.

"You are instructed that to one who enters a place of business under the proprietor's implied invitation of the public for the purpose of dealing with him in any line of business there conducted, the proprietor owes a duty of maintaining said premises in a reasonably safe condition and of exercising reasonable care in protecting him from injury."

### Instruction No. 15.

"You are instructed that a person who owns or maintains a public place of business is bound to keep it and the passage ways to and from it in a reasonably safe condition, and to use ordinary care to avoid accidents or injury to those properly entering upon his premises on business. A merchant or shopkeeper who maintains ware rooms for exhibitions and sale of goods impliedly solicits patronage and one who accepts the invitation to enter is not a trespasser or mere licensee, but is rightfully upon the premises by invitation."

### Instruction No. 16.

"You are further instructed that if you find and believe from the evidence that the plaintiff Ella J. Cogswell, entered the store of the defendant, C. C. Anderson Company, on the 20th day of October, 1945, as a customer for the purpose of inspecting or purchasing merchandise on display, or to secure merchandise theretofore purchased, and upon leaving said store fell and was injured, if you believe from the evidence that she fell and was injured, and if you further find that such fall and the injuries sustained by her were proximately caused by the carelessness and negligence of said defendant, C. C. Anderson Company, a corporation, in providing and maintaining an exit which by reason of its construction was unsafe and dangerous to persons passing through said exit, then your verdict should be for the plaintiffs."

### Instruction No. 17.

"You are instructed, that the law imposed upon the defendant the duty merely

of maintaining its premises in a reasonably safe condition and of exercising reasonable care to protect the plaintiff, Ella J. Cogswell, from injury, and that the duty owing by defendant to plaintiffs was not that of an insurer."

### Instruction No. 18.

"You are instructed that there is no presumption of negligence on the part of the defendant where the evidence merely shows that an injury has been sustained by the plaintiff, Ella J. Cogswell, though she was rightfully upon the premises and that likewise there is no liability for such injuries from dangers that are obvious or as well known to the plaintiffs as to the defendant."

### Instruction No. 19.

"You are instructed, Members of the Jury, that the fact that the street entrance in front of defendant's store building on Second Avenue West, Twin Falls, Idaho, is at a lower level than the floor inside as shown by the evidence, is not of itself negligence."

### Instruction No. 20.

"You are instructed, Members of the Jury, that even though you find from the evidence that the plaintiff, Ella J. Cogswell, did not know in fact of the difference in elevation between the floor of the defendant's store and the sidewalk, and, you further find from the evidence that she would have known of it if she had used her senses in a reasonable way and that her injury here sustained was due to her own inattention and carelessness as to her surroundings, then and in that event your verdict must be for the defendant."

### Instruction No. 21

"You are instructed that in entering commercial establishments that a person is charged with the duty to make reasonable use of all of his or her senses in order to observe an impending danger and if he or she fails to do so and is injured as a result thereof that he or she is guilty of contributory negligence and no one can recover for such injuries. If you find from the evidence that the plaintiff, Ella J. Cogswell, did not make reasonable use of all her senses immediately prior to the occurrence of the accident in question and by her failure to do so did not observe an impending danger, then in that event your verdict should be for the defendant and against plaintiffs."

When Instructions 16 and 19 are read and considered in connection with the other instructions above quoted (as the trial court expressly instructed the jury to do), they are neither inconsistent nor contradictory.

■ Moreover, where, as here, the trial court covered the issues in the case fully and fairly, in his instructions, it is not error to refuse to give requested instructions. Pierson v. Pierson, 63 Idaho 1, 10, 115 P.2d 742. To the same effect,

O'Connor v. Meyer, 66 Idaho 15, 21, 22, 154 P.2d 174.

"(5) Passion and prejudice through and by which an excessive verdict was returned by the jury, deliberately aroused by virtue of respondents' attorneys acts and conduct, and the failure of the Court in his instructions to the jury to admonish them with reference thereto or to guard against the consideration by the jury of such arguments primarily outside of the record."

That specification is based upon certain remarks made by counsel for respondents during the argument of the case to the jury. We quote:

"Mr. Rayborn: * * * And she will be lying in her grave with her bone broken through the carelessness of this outfit that wouldn't fix a door there that could have been fixed for 10 or $15.

"Mr. Chapman: If the Court please, we desire to object to this and except to counsel's remarks just made and cite them as prejudicial. There is no evidence here as to what the C. C. Anderson Company should have done with respect to the erection of anything if the Court please.

"The Court: Well, you may have your exception. Proceed.

"Mr. Chapman: And we further ask that the jury be admonished to disregard the remarks of counsel.

"The Court: No, you may proceed.

"Mr. Rayborn: I think probably if I was defending such a case of this kind I would make such an objection too. In the first place, I wouldn't defend a case of this kind. I don't believe the usual and honorable man, I don't believe—

"Mr. Chapman: Now if the Court please, we again assign as prejudicial error these remarks made for no other purpose than an attempt to excite the passion of the jury, the remarks just made as taken by the reporter, by counsel and ask that the jury be admonished to disregard such remarks.

"The Court: Well you may have your exception. You may proceed.

"Mr. Rayborn: And if the Court please, I would like not to be interrupted when I am trying to talk to the jury because I feel I am following the rules of this Court and I think counsel should keep quiet.

"The Court: No, counsel has a right to make his objections.

"Mr. Rayborn: When you people go to your jury room, don't pay any attention to what I have said, don't pay any attention to what Mr. Chapman has said but render a verdict that you think is kind and fair, the kind you would like someone else to render your mother under conditions of this kind. Sometimes in lawsuits, lawyers make an argument on the American Mortality Table. You're probably familiar with the American Mortality Table. It tells what the average person is expected to live and you are told that you can base your verdict on that.

"Mr. Chapman: Now if the Court please, we take exception to counsel's re-

marks for the reason there is no American Mortality Table introduced in evidence and that counsel is now testifying to the jury as to matters not in evidence and we cite that as prejudicial error and ask that the jury be admonished to disregard counsel's remarks with respect to any American Mortality Table.

"The Court: Yes, Mr. Rayborn, you will refrain from discussing the American Mortality Table as it is not in evidence.

"Mr. Rayborn: You folks noticed that I asked Mrs. Cogswell when she was examined last and she said about a week ago the last time by Dr. Beymer and Dr. Halley. I venture to say, two of the finest doctors in this town. I don't think there is two nicer doctors. Why was she examined by them? The other side wanted them to examine her.

"Mr. Chapman: Now we again cite counsel's remarks for the reason it is prejudicial for the reason there is no testimony in this record about at whose request under which Mrs. Cogswell was examined by Dr. Beymer and Dr. Halley.

"Mr. Rayborn: Mrs. Cogswell said that.

"Mr. Chapman: She did not say at whose request it was. She said she was examined by Dr. Beymer and Dr. Halley. We cite that as prejudicial error and ask that the jury be admonished.

"The Court: No, you may proceed.

"Mr. Rayborn: You notice they didn't call Dr. Beymer or Dr. Halley, etc. etc."

It will be noticed counsel for the Company objected to the remarks of counsel for respondents and requested the court to admonish the jury to disregard the same. The court, however, failed to admonish the jury as requested by the Company. The failure of the court to admonish the jury to disregard the remarks was, in effect, an overruling of the objection to the remarks, as well as the request for the admonition. Such ruling is deemed excepted to by sec. 7-502, I.C.A. (See, also, Stewart v. City of Idaho Falls, 61 Idaho 471, 479, 103 P.2d 697), and, therefore, presents the question as to whether the jury was, by the remarks complained of, aroused and inflamed and thereby and by reason thereof influenced to bring in a verdict for respondents.

In support of its contention a verdict was returned for respondents by the jury by reason of the misconduct of respondents' counsel, the Company cites McLean v. Hayden Creek Mining & Mill Co., 25 Idaho 416, 429, 138 P. 331, 335. In that case this court said:

"Improper and prejudicial remarks made by counsel for the plaintiff undoubtedly had their effect on the jury. Counsel for appellant objected to certain testimony offered by plaintiff, and plaintiff's counsel said: 'Why don't you stop objecting to questions and trying to prevent the jury from hearing the facts so that they can do the right thing?' And again: 'You ought to pay this man for his hard work.'

Question by counsel for the respondent to a witness for the appellant: 'Anything about that business that would make you hesitate to tell the jury that you are a banker?'. This was objected to, and the court said: 'I think that is improper. That may be stricken out.' Counsel for appellant: 'I want to make a protest in regard to the conduct of this case by counsel. Since the jury has been called there has been a steady attempt to try this case and wrest a verdict from this jury, not upon the testimony in the case, but by insinuations of counsel.' The court: 'I don't think it necessary to discuss that. The jury are not going to render a verdict on insinuations of anybody. I will instruct the jury relative to remarks of counsel. Mr. Gray, don't make those remarks.'

"It is a little remarkable that an attorney of high professional reputation would indulge in such irrelevant and prejudicial remarks during the trial of a case, evidently for the purpose of arousing the passions of the jury against the appellant corporation. Those remarks were certainly made for the purpose of prejudicing the jury, and nothing else, and it is surprising to this court that the trial judge would permit such remarks to be made, and, when the transgression is so flagrant, that he would not then and there reprimand counsel and punish him for contempt of court. It is very unpleasant to opposing counsel to have an attorney make such irrelevant and prejudicial remarks and statements before the jury for the purpose of prejudicing their minds in the case, and such conduct ought not to be tolerated for a moment. This court has had occasion heretofore to comment upon the misconduct of counsel in making remarks for the purpose of prejudicing the jury in favor of his client. See Goldstone v. Rustemeyer, 21 Idaho 703, 123 P. 635; Petajaniemi v. Washington Water Power Co., 22 Idaho 20, 124 P. 783; Powers v. Boise City, 22 Idaho 286, 125 P. 194. In the case at bar, the court failed to give the jury any instruction relative to this improper conduct on the part of counsel for respondent, after stating during the trial of the case that he would do so; and, even if the court had given such instruction, the virus of prejudice and passion was no doubt left in the minds of the jury by such remarks. An instruction by the court would not have eradicated it. Trial judges ought not to permit such disreputable practice, and, when it is called to the attention of this court, it will not be tolerated. Attorneys must govern themselves accordingly."

In the rather recent case of Stewart v. City of Idaho Falls, 61 Idaho 471, 475, 476, 479, 103 P.2d 697, 700, this court also had under consideration certain prejudicial remarks of counsel. In passing upon such remarks, we held:

" 'Counsel cannot deliberately go outside the evidence and attempt to incite the pas-

sions or prejudice of the jury and have such conduct cured by an instruction to the jury at the close of the trial, to the effect that they must not consider such remarks, and where a judgment is obtained by such conduct a new trial must be granted, unless it affirmatively appears that the judgment was right and would have been the same in the absence of such unauthorized argument.' [citing] Goldstone v. Rustemeyer, 21 Idaho 703, 708, 123 P. 635, 637; Petajaniemi v. Washington Water Power Co., 22 Idaho 20, 124 P. 783; Powers v. Boise City, 22 Idaho 286, 125 P. 194; Bates v. Price, 30 Idaho 521, 527, 166 P. 261. The rule has thus been obversely stated:

" ' "This court has many times had before it this identical question, and has proclaimed the rule that judgments will not be reversed by reason of misconduct of counsel at the trial, unless the appellate court is of the opinion that such misconduct had prevailing influence upon the jury to the detriment of appellant." ' Lightner v. Russell & Pugh Lumber Co., 52 Idaho 616, 625, 17 P.2d 349, 352."

On the question of misconduct, we direct attention to Bandoni v. Walston, 79 Cal. App.2d 178, 179 P.2d 365, 372:

" ' * * . * instances of misconduct are the wilful bringing in or attempting to bring in of irrelevant, *previously excluded* [emphasis by the California court], or incompetent evidence for the purpose of prejudicing the opposing party; the persistent pursuit of an incompetent course of questions. * * *' * * * (53 Am. Jur., pp. 360-361, § 459.) 'While a large discretion is allowed an attorney in presenting his case, nevertheless, where, in doing so, he oversteps the bounds of propriety and fairness which should characterize his conduct as an officer of the court, such conduct, where not cured by a proper instruction, may, if proper and timely objection is made, be ground for a new trial or for reversal of the case by the reviewing court.' (53 Am.Jur., p. 360, § 458.) As said in People v. Ah Len, 92 Cal. 282, 285, 28 P. 286, 287, 27 Am.St.Rep. 103: 'It follows that the only safe and just rule to apply in such cases is to make it impossible for a party to derive any advantage from such misconduct of counsel by promptly granting a new trial to the adverse party, unless it is clear that the verdict was not affected thereby.' "

Respondents contend the remarks complained of by the Company were not prejudicial and insist something must be presumed for the intelligence and fairness of jurors, citing Watkins v. Mountain Home Coop. Irr. Co., 33 Idaho 623, 637, 638, 197 P. 247, 251, where this court said:

"The fifth assignment is based upon alleged improper remarks of counsel for respondent, made during the course of the trial, wherein it is urged that respondent's counsel referred to appellant as a 'gigantic corporation' and 'artificial being,' which was attempting to drive 'this old couple'

out. We do not approve of the use of language of this kind. The trial judge, upon having his attention called to the remarks, instructed the jury that it was not to take into consideration the difference between the parties, or whether one of them was a corporation, and instructed counsel to be guided by such instructions. In view of the apparently painstaking attention given to the 'particular questions of fact' submitted to the jury, and having in mind the entire record, we are of the opinion that the minds of the jurymen could not have been greatly influenced by the remarks of counsel complained of, and in view of the court's instruction, that they do not amount to prejudicial error. Something must be presumed for the intelligence and fairness of the jurymen, and that they will not ordinarily be influenced into rendering a verdict contrary to the instructions of the court and the evidence, by every idle or improper remark that may be made during the progress of a trial."

It will be noted that, while the remarks made in the Watkins case, supra, were improper, they were not as objectionable as in the case at bar and, moreover, in the Watkins case, the court instructed the jury "it was not to take into consideration the difference between the parties, or whether one of them was a corporation, and instructed counsel to be guided by such instructions."

Respondents also cite, among other cases, **Lightner v. Russell & Pugh Lumber Co.,** 52 Idaho 616, 625, 17 P.2d 349, where it appears a motion for a nonsuit had been sustained to the second cause of action pleaded in that case, but that counsel for respondent, Lightner, in his argument to the jury, nevertheless, referred to certain orders set forth in such second cause of action. While it was improper, of course, to refer to the orders, just how the orders could have excited the passions of the jury, or influenced it is not disclosed. However, the court in the Lightner case, supra, as in the Watkins case, supra, instructed the jury concerning the remarks made by counsel.

In the case at bar the trial court failed to expressly instruct the jury not to consider the remarks made by counsel for respondents. It is true, however, the court did give the jury the following instruction: "Your verdict should be based upon the evidence admitted upon the trial and the instructions of the court applicable thereto and upon nothing else."

Concerning that instruction, respondents seem to have placed themselves in a rather awkward situation, in this: They insist in their discussion of the Company's fourth specification of error, that by the last above quoted instruction the court "definitely and clearly informed the jury that their verdict should be based on the evidence and not upon the pleadings or claims of the parties." On the other hand, in discussing the question as to whether the court instructed the jury not to consider the re-

marks complained of by the Company, respondents insist that by such instruction the court impliedly instructed the jury not to consider the remarks, and that "It must be presumed that the jury followed and obeyed" the instruction. It is just a little difficult to understand how respondents could be right in both instances.

■ As pointed out by the court in Bandoni v. Walston, supra, that:

"While a large discretion is allowed an attorney in presenting his case, nevertheless, where, in doing so, he oversteps the bounds of propriety and fairness which should characterize his conduct as an officer of the court, such conduct, where not cured by a proper instruction [as in the case at bar], may, if proper and timely objection is made [as in the instant case], be ground for a new trial or for reversal of the judgment by the reviewing court."

■ It appears to us justice will best be served by granting a new trial. That will put the parties, respectively, back in the position they occupied at the time of the original trial and give each party a chance to present the case anew to the court and jury, and, at the same time, will avoid the danger of doing appellant a grave injustice.

The judgment is reversed and the cause remanded with directions to grant a new trial. Costs awarded to appellant.

GIVENS, C. J., and HYATT, J., concur.

MILLER, Justice (concurring and dissenting).

I concur in the first four specifications presented in the majority opinion, but dissent to the fifth specification reversing the judgment for the reason that the asserted inflammatory and prejudicial remarks of respondent's attorney to the jury are not sufficient to warrant a reversal.

BUDGE, Justice (dissenting).

I cannot concur in the opinion as written in the above entitled case, therefore dissent.